HOWARD, A MINOR, ET AL., APPELLANTS AND CROSS-APPELLEES, v. ROGERS ET AL., D. B. A. TEENSVILLE, U. S. A., APPELLEES AND CROSS-APPELLANTS.

(No. 68-648—Decided July 2, 1969.)

*Messrs. Lindhorst & Dreidame* and *Mr. Charles D. Heile,* for appellants and cross-appellees.

*Messrs. McIntosh & McIntosh* and *Mr. Bruce B. McIntosh,* for appellees and cross-appellants.

TAFT, C. J. The Court of Appeals advanced as the only reason for its judgment of reversal that the trial court "failed to submit the issues of contributory negligence and/or assumption of risk to the jury." Neither of those issues had been raised by the pleadings nor had any party suggested that they should have been submitted to the jury for consideration. Hence, we agree with counsel for both parties that the reason advanced by the Court of Appeals will not support its judgment. See *Rhoades* v. *Cleveland*

(1952), 157 Ohio St. 107, 105 N. E. 2d 2, and *Oberlin* v. *Friedman* (1965), 5 Ohio St. 2d 1, 213 N. E. 2d 168.

However, defendants contend that the Court of Appeals should have rendered final judgment for defendants for the reason that the trial court should have granted defendants' motion for a directed verdict which was made at the conclusion of all the evidence.

It is not even suggested that there is any evidence in the record to support the allegations of the petition that the fight involved "was incited, promoted, instigated and allowed to commence and continue by the defendants individually" or "through their agents and employees." Plaintiff must necessarily rely upon the following allegations in her petition:

"* * * defendants provided no police, chaperon or other security protection for paying guests, including the plaintiff * * * to the dance sponsored by them, although, defendants knew, in the exercise of ordinary care, of the danger of the outbreak of a fight at said dance; and that, although defendants knew or, in the exercise of ordinary care, should have known of the imminence of a fight, they failed to warn the plaintiff * * * of this fact and failed to take any precaution whatsoever to protect her from it."

The evidence discloses that defendants had at least five adults besides themselves present at the dance, including the janitor of the school, so the only complaint about security protection could be that no police or other security protection was there in addition to those adults.

Further, there is no evidence that defendants knew of the danger of the outbreak of a fight at the dance or knew of the imminence of any such fight.

The evidence as to how plaintiff was injured and as to any disturbances is very meager.

The evidence discloses without dispute that, although the dance started sometime between 7:00 and 7:30 p. m., everyone was well behaved and there were no disturbances until about 10:00 p. m.

Plaintiff testified that she was "dancing with a bunch

of friends" in a circle dance when she heard some "rumbling" behind her; that she turned around and saw a "big mess on the floor," with "people fighting" and "legs kicking everywhere"; and that a boy of 13 whom she knew was picked up and thrown against her.

Plaintiff testified further that she knew most of the "kids" at the dance, did not know who started the fight, but did know two of the boys in the fight.

A girl who went with plaintiff to the dance testified that she and plaintiff had just "got through" dancing and were standing and turned around and there was a fight going on and they started to leave when plaintiff was hit. She did not know what started the fight.

There was evidence that there had been some disturbance outside the building about 10 to 15 minutes before the fight and that 12 to 15 boys and girls went outside to see what it was. One of the defendants called the police at that time but those who went out were coming back immediately after the call was made. There is no evidence as to what took place outside or that anyone seemed concerned or excited about what they had seen.

The evidence was to the effect that the subsequent fight, which resulted in plaintiff's injury, was of very short duration; that the police were called immediately; and that the dance was ended immediately after the fight.

A police officer testified that the police had been called at exactly 10:00 p. m., about something at the school. He proceeded immediately to the school, found no disturbance, and left. He testified further that, at some later unspecified time, identified by another witness as a very few minutes later, the police were again called and he returned to the school and found that "there had been a fight inside the room where the dance was, and * * * the people were leaving" and, at the request of one of the defendants, he stood by until the building was cleared.

The evidence principally relied upon by plaintiff was testimony of defendants that they had uniformed policemen at the six or seven teen-age dances that they con-

ducted at the Middletown Armory in Middletown, Ohio. Defendants' testimony also disclosed that they had police at those dances only because that was a requirement for a police permit for use of the Middletown Armory. One of the defendants testified that his band played at about 100 teen-age dances a year, that most of them were at schools, and that he had never seen a policeman at a school dance. There was no evidence to the contrary.

There is no evidence as to the size of the junior high school gymnasium where this dance was held, or as to the size of the space used for dances at the Middletown Armory. There is practically no evidence as to the number attending this dance (the only evidence is that about 50 were present by 7:15 p. m.); and there is no evidence as to the number attending the teen-age dances sponsored by defendants at the Middletown Armory. Thus, although we may take judicial notice that the population of Middletown in 1960, about three years before these dances, was 42,115, and the population of Franklin was then 7,917 and that Franklin is in an adjacent county about six miles from Middletown, we do not believe that the record discloses enough, either about those Middletown teen-age dances or about this junior high teen-age dance, to justify anyone in reasonably considering practices at those Middletown dances as any evidence of what ordinary care might require at the dance involved in the instant case. Cf. *Schwer* v. *New York, Chicago & St. Louis Rd. Co.* (1954), 161 Ohio St. 15, 24, 117 N. E. 2d 696.

At the time of this dance, defendants were the occupiers of the school gymnasium premises and, in conducting a dance therein for profit, were using those premises for a business purpose. At that time, plaintiff had been invited and paid a fee to attend that dance, and was therefore a business invitee of defendants on those premises.

Such an occupier of premises for business purposes may be subject to liability for harm caused to such a business invitee by the conduct of third persons that endangers the safety of such invitee, just as such occupier may be

subject to liability for harm caused to such invitee by any dangerous condition of those premises. *Holdshoe* v. *Whinery* (1968), 14 Ohio St. 2d 134, 237 N. E. 2d 127; Restatement of the Law, Torts 2d, Section 344. See *Sherlock* v. *Strouss-Hirshberg Co.* (1936), 132 Ohio St. 35, 4 N. E. 2d 912; *Johnson* v. *Wagner Provision Co.* (1943), 141 Ohio St. 584, 49 N. E. 2d 925; *Campbell* v. *Hughes Provision Co.* (1950), 153 Ohio St. 9, 90 N. E. 2d 694; *Kokinos* v. *Ohio Greyhound, Inc.* (1950), 153 Ohio St. 435, 92 N. E. 2d 386.

However, it is well settled that an occupier of premises for business purposes is not an insurer of the safety of his business invitees while they are on those premises. *Holdshoe* v. *Whinery, supra* (14 Ohio St. 2d 134); *Johnson* v. *Wagner Provision Co., supra* (141 Ohio St. 584); Prosser on Torts (3 Ed.), 402, Section 61.

Thus, where an occupier of premises for business purposes does not, and could not in the exercise of ordinary care, know of a danger which causes injury to his business invitee, he is not liable therefor. *Johnson* v. *Wagner Provision Co., supra* (141 Ohio St. 584); *Sherlock* v. *Strouss-Hirshberg Co., supra* (132 Ohio St. 35); *Holdshoe* v. *Whinery, supra* (14 Ohio St. 2d 134), at 138; Restatement of the Law, Torts 2d, Section 344, Comment f; Prosser on Torts (3 Ed.), 405, Section 61; annotation, liability of proprietor for injury to customer or patron caused by pushing, crowding, etc. of other patrons, 20 A. L. R. 2d 8, 25; annotation, liability of owner or operator of theatre or other amusement for assault on patron by another patron, 29 A. L. R. 2d 911, 915.

As stated in Comment f to Section 344 of the Restatement of the Law, Torts 2d:

"Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring or are about to occur. * * *"

In the instant case, there is no evidence from which reasonable minds could find that defendants either knew or in the exercise of ordinary care should have known of the

likelihood of a fight such as occurred at this dance. There is no evidence either of any such conduct at any teen-age dance in or near where this dance was conducted, or of anything which might have put defendants on notice as to the possibility of such a fight. Certainly, without such evidence, fighting at teen-age dances can not yet be regarded as common enough to support a reasonable inference that defendants should have known of its likelihood. In other words, we can not take judicial notice of the likelihood of fighting at a teen-age dance, especially where as here a substantial number of adults are present for the purpose of properly conducting, and are endeavoring to properly conduct, that dance.

In our opinion, the trial court should have granted defendants' motion for a directed verdict at the conclusion of all the evidence.

For the foregoing reasons the judgment of the Court of Appeals is affirmed so far as it reversed the judgment of the Court of Common Pleas, and final judgment is rendered for defendants.

*Judgment affirmed as modified.*

LEACH, MATTHIAS, O'NEILL, SCHNEIDER, HERBERT and DUNCAN, JJ., concur.

LEACH, J., of the Tenth Appellate District, sitting for ZIMMERMAN, J.. Because of the inability, "by reason of illness," of JUSTICE CHARLES B. ZIMMERMAN "to hear, consider and decide" this cause, JUDGE LEACH of the Court of Appeals was, pursuant to Section 2 of Article IV of the Constitution of Ohio, duly directed by the Chief Justice "to sit with the justices of the Supreme Court in the place and stead of" JUSTICE ZIMMERMAN, and JUDGE LEACH did so and heard and considered this cause prior to the decease of JUSTICE ZIMMERMAN on June 5, 1969,