Melodie Kay **HARSHBARGER** et al., Plaintiffs,

v.

**E. Karl FRANKS** et al., Defendants.

No. C–3–79–241.

United States District Court,
S. D. Ohio, W. D.

April 29, 1981.

Robert J. Huffman and Raymond L. Landis, Attys., West Milton, Ohio, for plaintiffs.

Robert J. Surdyk, Atty., Dayton, Ohio, for defendant Piqua Fort Hotel, Inc.

Frederick Freed, Atty., Piqua, Ohio, for defendant E. Karl Franks.

W. McGregor Dixon, Jr., Atty., Troy, Ohio, for defendant Favorite City Realty, Inc.

Francis McDaniel, Atty., Dayton, Ohio, for defendant Greyhound Lines, Inc.

RICE, District Judge.

I. *Introduction*

This matter is before the Court pursuant to the Motions of Defendants Favorite City Realty, Inc., E. Karl Franks, Piqua Fort, Inc., and Greyhound Lines, Inc. (hereinafter referred to as Favorite City, Franks, Piqua Fort, and Greyhound, respectively) for Summary Judgment under Fed.R. of Civ. Pro. 56. The latter three Defendants have maintained that they are entitled to judgment as a matter of law because no Defendant could reasonably have foreseen the danger of a business patron being violently assaulted on the premises of the Piqua Fort Hotel. Conversely, Plaintiffs have submitted various affidavits and offense reports from the Piqua Police Department in support of their theory that Defendants knew or should have known of the existence of such a danger. Favorite City, the remaining Defendant, has contended that it is entitled to summary judgment because, under Ohio law, a lessor who is out of possession cannot be held responsible for injuries to third persons which occur on the leased premises. Plaintiffs have countered this argument by maintaining that the "public

purpose" rule is an exception to the general rule of lessor liability, and that, as a consequence, Favorite City is not entitled to summary judgment.

Briefly, the pertinent facts of this case, as disclosed by the affidavits, pleadings and deposition of Plaintiff Melodie Harshbarger, indicate that on November 30, 1976, Favorite City, the owner of the Piqua Fort Hotel, entered into a lease agreement with Piqua Fort Hotel, Inc., which provided for the lease of the Hotel premises to Piqua Fort for a period of approximately five years. Piqua Fort then continued to operate the Hotel up to and after the time in question herein, with Defendant Franks, the president of Piqua Fort, overseeing the management of the Hotel. At some point prior to the incident herein, Greyhound contracted with Franks for facilities for accommodation of patrons and the sale of Greyhound bus tickets at the Piqua Fort Hotel.

On June 30, 1978, Plaintiff Melodie Kay Harshbarger went to the Piqua Fort Hotel to purchase Greyhound bus tickets in order to return to her home in Alabama. While at the Hotel, Plaintiff was allegedly attacked and raped by a hotel resident, Harvey Lee White. On June 26, 1979, Plaintiff and her husband filed this diversity action in tort against all the Defendants previously mentioned, alleging, *inter alia*, that the Defendants had been negligent in failing to use ordinary care to provide for the safety of persons intending to purchase a Greyhound bus ticket. Plaintiffs additionally alleged that the Defendant knew or should have known of the dangerous nature of the hotel residents and of the potential danger to prospective bus passengers. Defendants filed answers to the Complaint and Amended Complaint, after which time all Defendants submitted Motions for Summary Judgment, based on the grounds discussed above.

Each of the matters raised by the Defendants will be addressed by the Court, but first, a short recitation of the standards applicable to motions for summary judgment would be in order. Fed.R. of Civ.Pro. 56(c) provides with respect to summary judgment that:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a motion of law.

The rule is well established that in determining whether summary judgment is appropriate, "the pleadings are to be liberally construed in favor of the party opposing the motion," ... and "the court is required to take the view most favorable to the party opposing the motion, giving the party the benefit of all favorable inferences that may be drawn from the evidence." *McHenry v. Ford Motor Co.*, 269 F.2d 18, 22 (6th Cir. 1959) (citations omitted). With these factors in mind, the Court now turns to consideration of those questions presented by Defendants.

## II. Existence of Danger to Business Invitees—The Motions of Franks, Piqua Fort and Greyhound

As indicated, Franks, Piqua Fort, and Greyhound have requested that summary judgment be granted in their favor because they could not reasonably have foreseen that physical harm could be caused to a visitor or hotel patron. The Ohio Supreme Court has ruled that an occupier of business premises may be held liable for conduct of a third person which causes harm to a business invitee, *Howard v. Rogers*, 19 Ohio St.2d 42, 46, 249 N.E.2d 804, 807 (1969), but not where the occupier "does not, and could not in the exercise of ordinary care, know of a danger which causes injury to his business invitee." *Id.* at 47, 249 N.E.2d 807 (citations omitted). Thus, the issue before the Court is whether a genuine issue of material fact exists concerning the Defendants' ability, with the exercise of ordinary care, to know the danger to Plaintiff Melodie Harshbarger.

The affidavit of Franks, submitted in conjunction with each of Defendant's memorandum, reveals that for the past eighteen years Franks has lived at the Piqua Fort

Hotel and has also been employed there in various capacities, ranging from bell-hop to his present position as president of the Piqua Fort Hotel Corporation. During this time, the only exception to a history of apparent tranquility occurred approximately ten years ago, when a police officer was murdered at the Hotel while attempting to arrest a felon. Franks also stated that the majority of persons staying at the hotel are not transients, but are for the most part relatively penurious elderly residents who have never been robbed, raped, or physically harmed. With regard to the alleged assailant, Harvey Lee White, Franks indicated that White had been a guest at the Hotel for two months and had never been seen with any type of weapon. Additionally, Franks stated that he had never been told and had never observed anything which would indicate that White had a tendency for violence.

The above facts, the Defendants have contended, establish without doubt that they could not have foreseen the danger that a person visiting the Hotel would be abducted and raped. However, the affidavits and certified offense reports submitted by Plaintiffs demonstrate that an issue of material fact *does* exist with respect to whether Defendants could have known of the danger to Plaintiff Melodie Harshbarger, if they had exercised ordinary care. Specifically, the offense reports attached as Exhibit A to the Supplement to Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment, and certified as true and accurate copies of police reports from the files of the Piqua Police Department, disclose that the Hotel experienced a number of robberies, and attempted thefts during the time covered by the police reports (Reports No. 27561, 37210, 46072, 46178, 52479, 54926, 58391), at least one of which appears to have involved an elderly resident (Report No. 54926). In addition, the Hotel appears to have been occupied frequently by transients (Reports No. 32070, 32581, 35890, 41751, 45474, 45700, 46292), persons with serious mental problems (Reports No. 24990, 33428, 33523, 44765, 46292, 46887, 55020), and persons

who were intoxicated to the point of creating a disturbance (Reports No. 46003, 48546, 56885), or requiring arrest (Reports No. 33948, 33938, 41542, 43868, 46209).

Although no other rapes apparently occurred during the time in question, there is an issue with regard to whether such an event could be foreseen, particularly in light of the affidavits of Ward Chance and Gayle Douglas, which are attached as Exhibits B and C to Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment. Chance, a probation officer for the State of Ohio, and former state parole officer, indicates that during the time in question, he arranged with Franks to house parolees and probationers in the Piqua Fort Hotel, and on several occasions, spoke with Franks regarding their behavior. Moreover, Chance states that Harvey Lee White was a parolee on his caseload at the time of the rape, and that in the process of supervising White, Chance spoke to Piqua Fort Hotel employees and informed them that his purpose in visiting the Hotel was to see White. In addition, the affidavit of Gayle Douglas reveals that in her capacity as Income Maintenance Supervisor for the Miami County Welfare Department, she authorized the Miami County Auditor to make payment to the Piqua Fort Hotel for the housing of transients, convicts, and emotionally disturbed persons.

As the above affidavits and crime reports raise factual questions concerning the issue of whether Defendants could have known of the danger of harm to Plaintiff through the exercise of ordinary care, it is apparent that summary judgment would not be appropriate at this time. Accordingly, the Motions for Summary Judgment submitted by Defendants Franks, Piqua Fort and Greyhound are denied, due to the presence of genuine issues of material fact.

### III. *Defendant Favorite City's Motion for Summary Judgment*

The remaining matter for resolution concerns the Motion for Summary Judgment filed by Defendant Favorite City. The primary contention contained in the Memoran-

dum attached to Defendants' Motion is that, as a lessor "out of possession" and control, Favorite City cannot be held liable for injuries to third persons which occur on the leased premises. In response, Plaintiffs have maintained that a factual issue exists with respect to whether Favorite City was out of control or possession of the premises and that the control retained would, under the "public purpose" doctrine, preclude summary judgment for Defendant. Although Plaintiffs' position is that Favorite City has retained a sufficient degree of control over the leased premises as to subject it to potential liability for Plaintiffs' injuries, the undisputed facts do not disclose any such measure of control. Moreover, even if Defendant did retain any type of control, the amount reserved is not material to the present case, and would not, in any event, constitute a basis under Ohio law for requiring the continued presence of Favorite City as a Defendant in this action.

The affidavit of Karl Zimmerman, which is attached as Exhibit A to the Memorandum in Support of Defendant Favorite City's Motion for Summary Judgment, identifies Exhibit B, attached to the same Memorandum, as the lease agreement entered into by Favorite City and Piqua Fort. That document provides for the lease of the premises known as the Piqua Fort Hotel, to the corporation known as Piqua Fort Hotel, Inc., for a period of five years, beginning November 1, 1976. The lease further specifically provides that the Piqua Fort, the Lessee, will make all repairs in the interior of the building (¶ 3). The only "control" reserved by the Lessor appears to be the right of inspection at reasonable times (¶ 12), and the reservation of the duty to repair the exterior walls and the roof of the hotel. The former provision is a traditional inspection clause found in most leases, and the Court has been unable to find any Ohio case law indicating that the right of inspection is such control over the premises as to render an out of possession lessor liable for injuries to third persons. With regard to the control retained by the duty to repair, the only liability that could theoretically attach, based upon that reservation, would

be confined to an injury which had been proximately caused by Favorite City's failure to perform exterior repairs. As the incident in question has no potential relation to such an occurrence, any retained duties, or reservations of control by Favorite City, as well as the facts pertinent to those issues, would not be material to the case at hand.

Plaintiffs have cited *Holdshoe v. Whinery*, 14 Ohio St.2d 134, 237 N.E.2d 127, 1968 (Holdshoe), as imposing a duty on an out of possession lessor to provide for the safety of hotel patrons and business invitees. This theory, Plaintiffs have indicated, is based on a reservation of control, and the public use of the premises involved. The Court's careful consideration of that case, however, has disclosed no support for the theory of liability advanced by Plaintiff. *Holdshoe* did not deal in any respect with the liability of a lessor out of possession, or even partially in control of the premises, but rather was concerned with the liability of an *owner and occupier* of a picnic grove for injuries caused to one of his patrons. *Id.* at 134–135, 237 N.E.2d 128 (emphasis added). The main issue before the Court in that case was whether an owner in possession and control of land owed a duty to a plaintiff "to warn him of the danger of injury from possible negligent acts of third parties, or to act to prevent the plaintiff from sustaining injury from such acts of third parties, where the defendant knows, or should know that such acts are likely to occur." *Id.* at 136, 237 N.E.2d 128. The Court concluded that the owner and occupier, although not an insurer, did have a duty to exercise ordinary care to prevent injury to a patron. *Id.* at 134, 143, 237 N.E.2d 128, 133. This conclusion is much the same as that reached by the Court in *Howard v. Rogers*, 19 Ohio St.2d 42, 249 N.E.2d 804 (1969), the case cited previously in this Opinion. Thus, the Plaintiffs' "control" theory is not borne out by any authority cited by Plaintiffs, and as earlier mentioned, the Court's own research has yielded no support in Ohio law for attaching liability in the manner Plaintiffs have suggested.

As an alternative and related argument, Plaintiffs have indicated that there is a "public purpose" exception to the general rule regarding the liability of an out of possession lessor. Ohio has long followed the rule, as articulated in *Brown v. Cleveland Baseball Co.*, 158 Ohio St. 1, 106 N.E.2d 632 (1952) that:

> One having neither occupation nor control of premises ordinarily has no such [legal] duty with respect to the condition or use of those premises. In order to have the occupation or control of premises necessary to impose such a duty as to particular individuals, one must ordinarily have or exercise the power and right to admit such individuals to the premises or to exclude them from the premises.

*Id.* at 5, 106 N.E.2d 635. (Citation omitted). In addition, the Ohio Supreme Court has consistently followed the rule that a lessor who is out of possession is not liable for personal injuries even where he has contracted to make repairs. *Berkowitz v. Winston*, 128 Ohio St. 611, 612, 193 N.E. 343, 344 (1934) (Berkowitz). In *Berkowitz*, the Court further stated that "[t]here is no liability for tort without possession or control, and such possession or control cannot be predicated solely upon a promise to repair." *Id.* at 613, 193 N.E. 344.

The Court has already indicated its belief, based on the undisputed facts presented, that Favorite City did not retain any control over the leased premises, and that the reserved obligation to repair the exterior walls did not, as a matter of law, constitute the degree of control necessary for Favorite City to be liable in tort for the injuries sustained by Plaintiffs. Plaintiffs, however, have cited the case of *Rodeheaver v. Sears Roebuck and Co.*, 220 F.Supp. 120 (N.D.Ohio, 1962) (Rodeheaver), as creating a "public purpose" exception to the general rule of non-liability for lessors, even where a lessor did not retain control. According to Plaintiffs, *Rodeheaver* stands for the proposition that "where property is leased for some public use, the very nature of which operates as an invitation to third persons to enter thereon for the transaction of business, the lessor may be held liable for personal injuries sustained by a patron coming upon the premises upon such invitation." The Court's own reading of that case indicates that *Rodeheaver* does not in any manner create or recognize the theory of liability suggested by Plaintiffs, at least insofar as Ohio law is concerned.

As the parties are well aware, the present action has been filed pursuant to diversity jurisdiction; this Court is accordingly bound to apply the substantive law of the State of Ohio. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). The Court in *Rodeheaver, supra*, 220 F.Supp. 120 (N.D.Ohio, 1962) was also cognizant of this obligation, as is evidenced by the following comment:

> In similar circumstances [to the case at bar] it has been held that members of the public are invited by the owners as well as tenants, and that they cannot receive rent and permit their tenants to bring, in large numbers, upon their property those who do not have the opportunity to inspect it unless the owners have exercised due care to see that it is safe ... *Ohio has not gone so far.*

*Id.* at 123 (citations omitted) (emphasis added). Thus, the Court specifically noted that the "public purpose" rule followed by some other jurisdictions had not yet been adopted in Ohio.

The Court then stated that the specific issue of the negligent conduct of a landlord prior to the tenant's occupancy had not explicitly been considered by Ohio Courts, but found that the dicta in some Ohio cases could be read as inferring that a landlord could be held liable for negligence in the original construction of a building if the plaintiff had claimed, and had established, that the defect in question was the proximate cause of the injuries sustained. *Id.* at 123–124. Plaintiffs have attempted to invoke this standard herein, by contending that they can establish that a dangerous condition existed at the time of the lease. However, the Court does not believe that *Rodeheaver* can, in light of established Ohio law, be extended in the manner suggested

by Plaintiffs, and further, does not consider, even if such an application could be made, that any issues of material fact exist with regard to Favorite City's liability upon such theory.

Initially, it must be noted that *Rodeheaver* can be distinguished from the present case by virtue of the fact that it involved the possibly negligent construction of a building by a defendant-lessor. *Id.* at 121. An imposition of the factual basis of *Rodeheaver* upon the present case, indicates that *Rodeheaver* would direct the continued maintenance of this action against Defendant only if Plaintiffs had claimed that Favorite City had negligently constructed the Piqua Fort Hotel, and that such negligence was the proximate cause of Plaintiffs' injury. As no such allegations have been made herein by Plaintiffs, *Rodeheaver* does not in any sense require that Defendant's Motion for Summary Judgment be denied.

Moreover, assuming *arguendo* that this Court would find *Rodeheaver* applicable, the case authority specifically cited in *Rodeheaver* would compel the Court, as a matter of law, to conclude that there are no genuine issues of material fact present herein with respect to the liability of Favorite City. For example, in *Shindelbeck v. Moon*, 32 Ohio St. 264 (1877), the Court stated that:

> The principle which runs through [landlord-tenant] cases, determining the liability of the one or the other, may be thus defined: whoever had control of the premises at the *time the cause of injury originated*, that person is liable in damages, which simply means that the party in fault must respond.

*Id.* at 267 (emphasis added). When the facts thus far submitted are viewed in the light most favorable to Plaintiffs, the conclusion is inescapable that at the time the cause of Plaintiffs' injuries occurred (either at the time of the alleged rape, or at the earliest, possibly when White registered at the Hotel some two months earlier), Favorite City was not, as has been previously determined, in control of the premises.

Assuming *arguendo* that the cause of Plaintiffs' injuries could be extended to the time of the execution of the lease between Favorite City and Piqua Fort, on the theory that Favorite City should have anticipated what was possibly (according to the properly authenticated materials before the Court) a then nonexistent contract between Piqua Fort and Greyhound, the Court still does not find that any issues of material fact exist with respect to Favorite City's knowledge of a danger to prospective bus passengers. In this Court's opinion, the most serious questions raised by the factual materials under consideration concern the use of the Piqua Fort Hotel as an apparent "dumping ground" for transients, former convicts, and emotionally unstable persons, with the knowledge, if not consent, of Defendant Franks. (See Affidavits of Gayle Douglas and Ward Chance, Attached as Exhibits B and C to Plaintiffs' Memorandum in Opposition to Defendants Franks, Greyhound and Piqua Fort's Motions for Summary Judgment). No facts, however, have been presented to indicate that Favorite City, an out of possession lessor, either knew of or had any connection with, these activities. Furthermore, nothing which has been submitted controverts, expressly or by inference, the affidavit of Karl Zimmerman (attached as Exhibit A to Defendant Favorite City's Motion for Summary Judgment), wherein he states that Favorite City had no knowledge of criminal problems or of prior criminal acts in the geographical neighborhood of the Piqua Fort Hotel. Thus, no genuine issues of material fact exist even under the tenuous theory outlined *arguendo* by the Court.

The preceding analysis has indicated that genuine issues of material fact do not exist with regard either to the extent of control reserved by Favorite City as an out of possession lessor, or concerning whether Favorite City knew or should have known of the danger that Plaintiff Melodie Harshbarger would be attacked on the hotel premises by a third party. Additionally, the Court has concluded that the "public purpose" rule cited by Plaintiffs does not prevent Defendant Favorite City from being enti-

tled to judgment as a matter of law. Accordingly, the Court finds that the Motion of Defendant Favorite City for Summary Judgment should be granted.

IV. *Conclusion*

Based on the foregoing discussion, the Court finds that:

1. The Motions for Summary Judgment filed by Defendants E. Karl Franks, Piqua Fort Motel, Inc., and Greyhound Lines, Inc., are not well taken and are hereby denied;

2. Defendant Favorite City Realty, Inc.'s Motion for Summary Judgment is well taken and Summary Judgment is therefore granted for Defendant Favorite City Realty, Inc. against Plaintiffs Melodie Kay Harshbarger and Nicky Harshbarger. Judgment shall enter accordingly in favor of the Defendant, Favorite City Realty, Inc. and against the Plaintiff.

Trial on the merits of the captioned cause will begin at 9:30 a. m. on Monday, May 4, 1981.