OPINION
Plaintiff/Appellant, Shane Alexander appeals the judgment of the Shelby County Court of Common Pleas granting summary judgment to Defendant/Appellee, The Pub, Inc., and Defendant/Appellee, Dwight Meyer, on Alexander's action to recover damages for personal injuries.
The Pub is a restaurant/nightclub, which has disk jockey music. The Pub is an Ohio Corporation. Meyer is a fifty-percent shareholder in The Pub and acts as the general manager of the bar.
On April 17, 1997, Alexander was at The Pub. Meyer was not present in the bar that night. Alexander had frequented the bar three to four times a month for the six months prior to April 17, 1997. Alexander admitted that he previously had seen fights in the bar.
During his visit to the bar on April 17, 1997, Alexander saw Ed Supinger sitting at the bar. Supinger approached Alexander and engaged in a short conversation with him. Supinger either stepped back or turned to walk away from Alexander when he suddenly turned around and punched Alexander in the nose. Supinger then left the bar. Alexander sustained injuries as a result of the assault. Alexander sued The Pub, Meyer, Supinger, and American Medical Security.[1]
The trial court granted The Pub's and Meyer's motion for summary judgment on October 9, 1998. On October 21, 1998, Alexander filed a notice of appeal, which this Court dismissed sua sponte for lack of jurisdiction. Alexander then voluntarily dismissed his complaint against Supinger and American Medical Security.[2] As a result of the dismissals, the only parties remaining in this action are Alexander, The Pub, and Meyer. The trial court entered a final, appealable judgment entry on December 9, 1998.
Alexander now appeals the trial court's judgment granting summary judgment to The Pub and Meyer ("Appellees"). Alexander asserts the following assignment of error.
The trial court erred in granting defendants' motion for summary judgment.
In considering an appeal from the granting of a summary judgment, we review the grant of the motion for summary judgment independently and do not give deference to the trial court's determination. Schuch v. Rogers (1996), 113 Ohio App.3d 718, 720. Accordingly, we apply the same standard for summary judgment as the trial court. Midwest Specialties, Inc. v. Firestone Tire 
Rubber Co. (1988), 42 Ohio App.3d 6, 8.
Summary judgment is proper when, looking at the evidence as a whole (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party. Civ.R. 56(C); Horton v. Harwick Chemical Corp. (1995), 73 Ohio St.3d 679,686-87. To make this showing the initial burden lies with the movant to inform the trial court of the basis for the motion and identify those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. Those portions of the record include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action. Civ.R. 56(C).
In the instant case, Alexander alleges that The Pub owed a duty to protect or a duty to warn its patrons from known risks of harm and that it was foreseeable that patrons would be injured from violent acts of third parties within its premises.
The Appellees contend that Alexander had actual knowledge of fights in The Pub and therefore, his duty to warn argument is without merit. The Appellees also claim that no duty is owed to protect Alexander from risks and dangers obvious to him. If such a duty is owed to Alexander, the Appellees allege that they exercised the ordinary and reasonable care expected under the circumstances. Namely, that no amount of security could have protected Alexander because of the suddenness of the attack.
At trial, Alexander has the burden to show that the Appellees owed him a duty, that the Appellees breached that duty, and that damages proximately resulted from that breach. Jeffers v. Olexo (1989), 43 Ohio St.3d 140, 142. The existence of duty in a negligence action is a question of law for the court to determine. Mussivand v. David (1989), 45 Ohio St.3d 314.
It is well-established law in Ohio that a business owner owes a duty to safeguard its invitees from criminal acts of third parties.
 An occupier of premises for business purposes may be subject to liability for harm caused to a business invitee by the conduct of third persons that endangers the safety of such invitee, just as such an occupier may be subject to liability for harm caused to such invitee by any dangerous condition of those premises.
 An occupier of premises for business purposes is not an insurer of the safety of his business invitees while they are on those premises.
Howard v. Rogers (1969), 19 Ohio St.2d 42, paragraphs one and two of the syllabus.
 [Moreover, a] business owner has a duty to warn or protect its business invitees from criminal acts of third parties when the business owner knows or should know that there is a substantial risk of harm to its invitees on the premises in the possession and control of the business owner.
Simpson v. Big Bear Store Co. (1995), 73 Ohio St.3d 130, syllabus.
"The existence of a duty * * * will depend upon the foreseeability of harm." Jeffers, 43 Ohio St.3d at 142-43. A foreseeable act is one that a reasonably prudent person should anticipate and, in the case of criminal acts perpetrated on invitees, foreseeability depends on the knowledge of the property owner. McKee v. Gilg (1994), 96 Ohio App.3d 764, 767. In Ohio, two tests exist to determine whether a criminal act by a third party to an invitee was foreseeable. Heys v. Blevins (June 13, 1997), Montgomery App. No. 16291, unreported. One test looks at whether the danger posed by a third party was foreseeable by focusing on the existence of similar acts. See Howard, supra; Hickman v. Warehouse Beer Sys., Inc. (1993), 86 Ohio App.3d 271; Montgomery v. Young Men's Christian Ass'n (1987), 40 Ohio App.3d 56; Taylor v. Dixon (1982), 8 Ohio App.3d 161; Townsley v. Cincinnati Gardens, Inc. (1974), 39 Ohio App.2d 5. "According to this line of cases, the occurrence of prior similar acts suggests that the danger was foreseeable." Hey, supra.
The other test examines the totality of the circumstances to determine whether the danger posed by a third party was foreseeable. See Walworth v. BP Oil Co. (1996), 112 Ohio App.3d 340; Reitz v. May Co. Dept. Stores (1990), 66 Ohio App.3d 188; Meyers v. Ramada Inn (1984), 14 Ohio App.3d 311; Farago v. Panini's Internatl., Inc. (Oct. 15, 1998), Cuyahoga App. No. 73463, unreported. "This test not only takes into consideration past experiences, but also looks to such factors as the location of the business and the character of the business to determine whether the danger was foreseeable." Hey, supra, citing Reitz,66 Ohio App. 3d at 193. The totality of the circumstances must be "somewhat" overwhelming in order for foreseeability to be established. Reitz, supra.
In Rush v. Lawson (1990), 65 Ohio App.3d 817, 820, this Court stated that
 [i]n such cases, the controlling issue turns upon whether the criminal acts and resulting injuries were reasonably foreseeable. In other words, did previous experience on the premises create a duty to provide additional protection for business invitees?
Accordingly, it appears that this Court would follow the first test. However, our review of the case before us indicates that, under either standard, Alexander presented evidence to the trial court that the Appellees anticipated, or should have reasonably anticipated, the assault committed against him. Thus, we find that a genuine issue of material fact remains to be litigated upon the issue of whether the bar had a duty to protect Alexander from injury due to criminal activity. Attached to Alexander's motion for summary judgment is the Affidavit of Nancy Steinke, who is employed by the Sidney Police Department. Attached to her affidavit are the official reported incidents of assaults at the premises of The Pub from June 21, 1992 through February 1, 1998. Fifty-five victims are listed for this time period, including Meyer, himself. We do note that six of the incidents occurred after April 18, 1997.[3]
Also attached to Alexander's motion for summary judgment is the Affidavit of John R. Lenhart, a former Sheriff of Shelby County and former Superintendent of the Ohio Bureau of Criminal Investigation and Identification.[4] Lenhart states that in his opinion "the security in place at The Pub on April 18, 1997, was woefully inadequate to insure the safety of the patrons of the establishment and specifically, to protect Plaintiff Shane Alexander from injury."
Lenhart bases his opinion on the following observations:
 First. There was a grossly insufficient number of personnel on hand and none of such personnel had any training or experience whatever in security matters. The person designated as "bouncer" had been employed by the establishment for only a few months and had neither training nor experience to serve in that capacity.
 Second. Those persons ostensibly assigned to oversee security had too many other and conflicting assignments, i.e. assistant manager, supervisor of operations, ticket taking, bar tender [sic], etc.
 Third. Although I noted a reference to a "black list" of persons known to be troublemakers, it appeared that no serious effort was ever made to exclude such persons from the premises.
 Fourth. There appeared to be no Security Policy or Recommended Procedures in place to guide personnel as to how to avoid violent activity or how to react to incidents of violent activity or assault. Neither do there appear to have been any published rules concerning the duties or conduct of employees or other personnel or restrictions concerning their own consumption of alcoholic beverages while on duty.
 Fifth. There appeared to be no posted warnings, standards of conduct, admonitions concerning behavior, dress code or other matters.
In his deposition, Alexander stated that, on the night in question, Supinger "was pretty drunk." Alexander was standing at a table when Supinger came up to him. Alexander stated that Supinger "came up to my right shoulder [and] said he had a problem with me * * *." Alexander had never seen Supinger before. After Supinger made the comment that he knew Alexander's ex-girlfriend, Supinger stepped back. Supinger then hit Alexander in his nose. As a result of the incident, the whole bridge of Alexander's nose was shattered.
In his deposition, Supinger testified that he went to The Pub with his fianc~e. He drank four to six beers between 9:00 p.m. and 10:30 p.m. Supinger was feeling the effects of the beer a "little bit." Supinger never had contact with Alexander prior to April 18, 1997.[5] Supinger stated that he "[j]ust knew of him" and that "[p]eople pointed him out" to him.
Supinger went over to Alexander and asked him to "step outside and get this all over with and be done with it." Alexander stated that he did not want to go outside with Supinger. Supinger stated that he turned to walk away and Alexander grabbed his shoulder. Thinking he was going to get hit by Alexander, he turned around and hit Alexander one time. He then asked Alexander if they were done and Alexander said "yeah." Supinger admitted that he was charged with disorderly conduct from the event and had to pay a fine.
Supinger stated that there was no notice to The Pub or its employees that there was going to be an altercation between himself and Alexander because the incident happened so quickly. In addition, Supinger had never been asked to leave The Pub because of his behavior.
In his deposition, Meyer testified that the average crowd on a Thursday night was about one hundred and fifty people. Meyer testified that he probably had six employees working on the night in question. We note that in his deposition and in his interrogatories, Meyer only refers to four employees.
On that night, Doug Richardson was in charge of The Pub. The bouncer, Todd Welch did not have any security training and had been a bouncer for The Pub for about three to five months. Waitress, Molly Kinninger, and Disc Jockey, Bill Emerson were also both on duty on April 17, 1997. In his affidavit, Meyer stated that on that night there were on the premises a " 'bouncer' charged with door security and general maintenance and crowd control; a bartender also charged with overseeing crowd control; and a D.J. also charged with assisting in maintaining order and crowd control."
In his deposition Meyer stated that The Pub does have security cameras, which are used to "keep an eye on the cash registers." The security cameras also act as a witness to incidents that occur in the bar.
The Pub also has a list of people who are not allowed into the bar. Supinger was not on the list prior to this incident and Supinger was also not placed on the list after this incident. However, Meyer testified in his deposition that Supinger is not allowed in the bar per an "understanding." The Pub does not have posted signs warning patrons of potential risk for personal injuries at the hands of another patron.
In his affidavit, Meyer also claims that Supinger was not a frequenter of the bar, although he may have been there on past occasions. Supinger had never caused any trouble prior to this incident. Meyer contends that The Pub was not aware of any ill feelings between Alexander and Supinger.
Citing Meyers, 14 Ohio App.3d at 313, the Tenth Appellate District in King v. Lindsay (1993), 87 Ohio App.3d 383, 387 held that "if special circumstances exist, such as previous assaults, ordinary care may require additional security measures to protect members of the public."
Although the Appellees may not have known specifically of Supinger's attack, we find that the Appellees may have been aware that acts of physical violence were likely to occur, as evidenced by the number of past incidents of assault. Despite the Appellees' knowledge of past violence and the likelihood that it would occur again, the evidence, construed most strongly in favor of Alexander, shows that there was only one bouncer in the bar and that he was checking identification and taking cover charge money. Although the disc jockey and bartender were also charged with crowd control, they had other responsibilities, which regularly diverted their attention from the crowd. As a result, the patrons, which may have numbered one hundred and fifty, were not monitored consistently.
Accordingly, we agree with the Tenth Appellate District and find that when special circumstances exist there may be a need for increased security. Such circumstances did exist here, as there were numerous previous reported incidents of assaults at the bar. For these reasons, we find that a genuine issue of material fact exists as to whether a sufficient number of appropriate security personnel were present to protect The Pub's patrons.
We also note that primary assumption of the risk requires the plaintiff to expose himself "reasonably and voluntarily" to an obvious or known danger that would relieve the defendant from any duty to protect the plaintiff. Siglow v. Smart (1987), 43 Ohio App.3d 55. Primary assumption of the risk is an absolute bar to recovery in a negligence action. Anderson v. Ceccardi (1983),6 Ohio St.3d 110. Although Alexander was aware that fights did occur in The Pub, we cannot find that a genuine issue of material fact exists as to whether Alexander reasonably and voluntarily exposed himself to an attack by Supinger. Accordingly, we do not find merit in the Appellees' contention that Alexander assumed the risk of being assaulted by Supinger.
Summary judgment was therefore improperly granted to the Appellees. We sustain Alexander's assignment of error and reverse the judgment of the trial court.
Judgment reversed.
BRYANT, P.J., and SHAW, J.
[1] American Medical Security paid Alexander's medical expenses.
[2] American Medical Security also dismissed its cross-appeal.
[3] To explain the dates in question, we note that Alexander went to The Pub on Thursday, April 17, 1997. The police report indicates that the incident occurred on Friday morning at 1:00 a.m.
[4] Lenhart also refers to other employment experience and training in his affidavit.
[5] At another point in his deposition, Supinger stated that he had asked Alexander to step outside a few times prior to the incident in question, but that both of them had always walked away.