DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Plaintiff-Appellant David S. Caywood has appealed the judgment of the Summit County Court of Common Pleas which granted summary judgment to Defendants-Appellees Ryan's Family Steakhouse, Inc. et. al. This Court affirms.
 I {¶ 2} On June 15, 2003, Plaintiff-Appellant David S. Caywood ("Caywood") filed a complaint for negligence against Defendants-Appellees Ryan's Family Steakhouse, Inc., et. al. ("Ryan's") in the Summit County Court of Common Pleas. Caywood's claim arose from an incident between Caywood and an unknown Ryan's patron on September 17, 2002. The complaint alleged that while eating at the restaurant, Caywood was verbally accosted by the assailant and was subsequently attacked in the lobby and beaten in the parking lot by the assailant and another man. Caywood's complaint alleged that Ryan's employees refused to assist Caywood in any way, including but not limited to, calling the police; that Ryan's employees knew the assailant was hiding in wait to attack Caywood, yet failed to warn Caywood of the danger; that Ryan's employees watched the pummeling, yet did nothing to assist Caywood; that Caywood was an invitee and Ryan's breached their duty of reasonable care; and that Ryan's employees, while acting within the scope of their employment, encouraged and incited the assailant. On July 6, 2004, Ryan's filed an answer to the complaint.
 {¶ 3} On September 7, 2005, Ryan's filed a motion for summary judgment. Caywood filed a brief in opposition to Ryan's motion for summary judgment on September 30, 2005. On October 14, 2005, Ryan's filed a reply brief in support of its summary judgment motion. On March 15, 2006, the trial court granted Ryan's motion for summary judgment. The court found that Ryan's did not owe Caywood a duty to protect him from the criminal actions of a patron.
 {¶ 4} Caywood has timely appealed, asserting one assignment of error.
 II Assignment of Error
"THE TRIAL COURT ERRED IN GRANTING RYAN'S MOTION FOR SUMMARY JUDGMENT."
 {¶ 5} In his sole assignment of error, Caywood has argued the trial court erred when it granted summary judgment to Ryan's because genuine issues of material fact remained for a jury to determine. Specifically, Caywood has argued that genuine issues of material fact remained concerning whether Ryan's conformed to the standard of reasonable care, including protecting invitees from foreseeable harm by a third party. We disagree.
 {¶ 6} An appellate court reviews an award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. This Court applies the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12. Pursuant to Civ.R. 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 7} The party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying portions of the record that demonstrate an absence of a genuine issue of material fact as to some essential element of the non-moving party's claim. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 292. To support the motion, such evidence must be present in the record and of the type listed in Civ.R. 56(C). Id.
 {¶ 8} Once the moving party's burden has been satisfied, the non-moving party must meet its burden as set forth in Civ.R. 56(E). Id. at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material to demonstrate a genuine dispute over the material facts. Id. See, also, Henklev. Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 9} Pursuant to Civ.R. 56(C):
"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
 {¶ 10} In its decision below, the trial court held that Ryan's, as a business, did not owe a duty to warn or protect Appellant, its invitee, from the criminal act of a third party. In Ohio, "`[a] business owner has a duty to warn or protect its business invitees from criminal acts of third parties when the business owner knows or should know that there is a substantial risk of harm to its invitees on the premises in the possession and control of the business owner.'" Spicer v. Rich, 9th Dist. No. 21295, 2003-Ohio-2639, at ¶ 12, quoting Simpson v. Big BearStores Co. (1995), 73 Ohio St.3d 130, syllabus. In other words, the criminal act must be foreseeable. The foreseeability of harm in such situations "depends upon the knowledge of the business owner, and is determined by the totality of the circumstances." Id. at ¶ 13 quoting Feichtner v. Cleveland (1994),95 Ohio App.3d 388, 395-396.
 {¶ 11} However, a business owner is not an insurer of its invitee's safety. Atkins v. Chudowsky (Oct. 31, 2001), 9th Dist. No. 01CA007834, at *4, citing Howard v. Rogers (1969),19 Ohio St.2d 42, 47. Accordingly, "somewhat overwhelming" circumstances are required to establish the foreseeability of the harm. Spicer at ¶ 13. "Because `somewhat overwhelming' circumstances are required to establish the foreseeability of the harm and, thus, the existence of a duty, courts are reluctant to impose a duty to protect invitees from the criminal acts of third parties when no evidence of prior, similar occurrences appears on the record." (Quotations omitted). Id.
 {¶ 12} After reviewing the record and construing the evidence in the light most favorable to Caywood, this Court finds that Ryan's did not owe a duty to Caywood because the attack on him was not foreseeable. The record clearly indicates that Ryan's met its initial burden to inform the trial court of the basis for the motion and identify portions of the record that demonstrate an absence of a genuine issue of material fact as to some essential element of the non-moving party's claim, namely, the lack of foreseeability of Caywood's assault. In turn, Caywood failed to provide evidence of "somewhat overwhelming" circumstances which demonstrate a genuine issue of material fact concerning the foreseeability of his harm. Accordingly, Caywood fell short of his reciprocal burden under Dresher and summary judgment in favor of Ryan's was appropriate.
 {¶ 13} As discussed above, we are reluctant to impose a duty to protect invitees from the criminal acts of third parties barring evidence of prior, similar occurrences. While prior, similar occurrences are not dispositive of the issue, they are an integral part of our analysis. Caywood did not present any evidence of prior, similar occurrences at Ryan's, or evidence that the restaurant is located in a high crime area, or evidence that Ryan's is a business that is susceptible to criminal activity.
 {¶ 14} To the contrary, Kristin Long, Caywood's girlfriend and a witness to the verbal assault inside Ryan's, testified in her deposition that the stretch of Arlington Road where Ryan's is located is not a "bad" or "high crime potential" area. Long testified that as a former manager of an East of Chicago pizzeria located near Ryan's, she was never required to take extraordinary security measures. Long also testified that she was unaware of any restaurants near Ryan's that employed extra security.
 {¶ 15} Caywood has argued that the assault was foreseeable because Ryan's employees had stopped working and intently watched the assailant verbally accost his party. According to Caywood, Ryan's employees should have known the situation was volatile and done something to diffuse it. First, Caywood has presented no evidence other than his deposition and that of his girlfriend as to this allegation. The record contains no other evidence that Ryan's employees were watching the verbal confrontation and were in any way aware of the situation or of the violent threats leveled at Caywood by the assailant. As noted in Dresher, a non-moving party may not rest on mere allegations and denials to establish a genuine issue of material fact. Dresher,75 Ohio St.3d at 293. The testimony proffered by Caywood is self-serving and insufficient by itself to establish a genuine issue of material fact.
 {¶ 16} Further, even were we to accept the proffered testimony that Ryan's employees were aware of the volatile nature of the situation, we cannot conclude that such awareness translates into foreseeability that the assailant would assault Caywood on Ryan's property. In putting forth this argument, Caywood has asked us to impute foreseeability on Ryan's employees when all of the evidence presented indicates that Caywood himself did not foresee the assault. Caywood is an Army military policeman, assigned to the criminal investigative division. He is state certified as a peace officer and is certified as a corrections officer by the Summit County Sheriff's office. He readily admitted that he had experience with volatile situations such as the one on September 17, 2002.
 {¶ 17} Although Caywood was aware of the volatile situation, the record demonstrates that such awareness did not translate into foreseeability of assault in his own mind. Caywood testified that he thought the assailants were gone and that he did not feel he was in danger when he followed the assailant into the lobby. Notably, Caywood emphatically testified that he had absolutely no knowledge that he was about to be assaulted.
 {¶ 18} Further, video from Ryan's surveillance camera supports our conclusion that Caywood neither perceived the assailant as a threat nor foresaw the impending assault. It is clear from the surveillance video that Caywood immediately
followed the assailant out of the dining area and into the lobby — not after several minutes as he claimed in his deposition testimony.[1] The video reveals that Caywood was approximately less then five feet behind the assailant as he left the dining area and proceeded into the lobby area. Caywood's explanation that the only reason he felt safe and did not foresee the attack was that he thought the assailant had left does not stand up to the video evidence provided by Ryan's which depicts him following on the assailant's heels. Clearly, Caywood knew that the assailant had not left and felt that it was safe to follow him directly into the lobby area. This conclusion only serves to increase the probability that Caywood did not foresee an imminent attack.
 {¶ 19} Yet, Caywood has suggested that Ryan's cooks, servers, and restaurant managers should have foreseen what he, a trained and by all accounts capable, member of the military police did not. In his deposition, Caywood admitted that to a layperson (or one without experience with escalating violent situations) it would appear that the situation had been diffused when the assailant and his party left Caywood's table and the dining room area. Caywood has not presented any evidence to support the conclusion that the average Ryan's patron or employee would have any reason to think that the situation had not been diffused.
 {¶ 20} Caywood has also argued that the assault was foreseeable because Ryan's employees could clearly see that the assailant was lying in wait for him. However, Caywood has presented no evidence other than his own testimony that Ryan's employees were aware that the assailant was lying in wait to assault him. In his deposition, Caywood testified that he personally had no knowledge that Ryan's employees were aware that the assailant was hiding. Further, he has presented no other evidence to support his claim that Ryan's employees could see the assailant was waiting to attack him. Instead, Caywood has argued that Ryan's should have known the assailant was waiting to ambush him because Ryan's employees were "always" manning the cash registers and handing out trays for the buffet and that there was always a manager near the cash registers. Essentially, Caywood has argued that the employees in the lobby area must have seen the assailant and should have connected the dots that the assailant's sole purpose for being in the lobby was to assault Caywood.
 {¶ 21} This Court cannot make such a conclusion. Initially, we note that the surveillance video shows that there were no cashiers stationed at the two registers within the scope of the camera. Granted, this Court is limited by the angle and number of security cameras covering the lobby, and admittedly, there may be more registers than the two visible on the tape. More importantly, however, Caywood has not provided any evidence other than his testimony that there were any cashiers and or managers in the lobby area.
 {¶ 22} Even were we to presume that one or more Ryan's employees were milling around in the lobby area, we cannot conclude that they should have foreseen the assault. Contrary to Caywood's assertions, the video evidence introduced by Ryan's clearly shows that Caywood was walking immediately behind the assailant, making it highly unlikely that the assailant was able to set up an ambush. Further, according to the video, it appears to this Court that the Ryan's lobby is an open space which leads to an enclosed, glass foyer. Based on the openness of the lobby/foyer and Caywood's close proximity to the assailant as he left the dining area, we can only conclude that if the assailant was visible to any Ryan's employee working in the lobby, then he was visible to Caywood as well.
 {¶ 23} Based on the video evidence before us, this Court finds that Caywood's attempt to portray the assailant as hiding somewhere in the lobby, waiting for Caywood to come around the corner, all the while in plain view of Ryan's employees, is exaggerated at best. While it appears that the assailant attacked Caywood from behind, this Court finds it highly doubtful that he was able to do so because he was lying in wait for him. It is even more doubtful that the host, servers, bussers, or managers of Ryan's had any idea that such a violent outburst was going to occur as the two men walked through the lobby.
 {¶ 24} The surveillance video is disquieting. Caywood was assaulted and severely injured by the assailant. What happened to him was inexcusable in a land governed by the rule of law, regardless of the circumstances. However, that fact alone does not make Ryan's liable for Caywood's injuries. To establish liability, Caywood was required to present evidence of "somewhat overwhelming" circumstances to demonstrate foreseeability and therefore, a duty owed to him by Ryan's. To avoid summary judgment, Caywood was required to satisfy his burden of demonstrating a genuine issue of material fact as to any essential element of his claim. Caywood did not satisfy hisDresher burden and thus, the trial court did not err when it granted summary judgment in favor of Ryan's.
 {¶ 25} Accordingly, Caywood's sole assignment of error lacks merit.
 III {¶ 26} Caywood's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Moore, J. Boyle, J. concur.
[1] When asked if he immediately followed the assailant's party out of the restaurant, Caywood denied it, and stated: "I waited until I saw them walking out to their car thinking they had cleared the restaurant. Now, I don't want to go up there and tail them, all they have to do is turn around and assault me." Earlier in his testimony, Caywood had testified that he had sat at this table, letting things "sink in" before he got up to follow the assailants to obtain the license plate number from the assailant's vehicle.