[Cite as *Hale v. State Farm Mut.l Auto. Ins. Co.*, 2018-Ohio-3035.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

ALBERT JOHN HALE

     Plaintiff-Appellant

-vs-

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY

     Defendant-Appellee

JUDGES:
Hon. W. Scott Gwin, P.J.
Hon. William B. Hoffman, J.
Hon. Earle E. Wise, Jr., J.

Case No. 2017CA00223

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Stark County Court of Common Pleas Court, Case No. 2017CV00097 |
| JUDGMENT: | Reversed and Remanded |
| DATE OF JUDGMENT ENTRY: | July 30, 2018 |
| APPEARANCES: | |

For Plaintiff-Appellant

JOHN T. SCANLON
The Scanlon Group, Co. L.P.A.
4040 Embassy Parkway Ste 240
Akron, Ohio 44333

For Defendant-Appellee

MATTHEW P. MULLEN
JOHN P. MAXWELL
ALETHA M. CARVER
Krugliak, Wilkins, Griffiths &
Dougherty Co., L.P.A.
158 North Broadway St.
New Philadelphia, Ohio 44663

*Hoffman, J.*

**{¶1}** Appellant Albert John Hale appeals the summary judgment entered by the Stark County Common Pleas Court dismissing his breach of contract action against Appellee State Farm Mutual Automobile Insurance Company.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** At approximately 8:26 p.m. on April 8, 2016, Appellant was involved in an automobile accident on Interstate 77. Five vehicles were travelling southbound in the center of three lanes in the following order: a pickup truck, a Honda Pilot (hereinafter "Pilot"), a Chevy Traverse (hereinafter "Traverse"), a Mitsubishi Outlander operated by Appellant, and a Saturn LS (hereinafter "LS"). It was dark outside, and a rain-snow mix was falling.

**{¶3}** The pickup truck was carrying a barbeque grill in its bed, which fell off the truck into the center lane of travel. The pickup continued on its way, and the driver was not identified. The Pilot came to a complete stop in the lane of travel without striking the grill. The Traverse swerved to the left upon seeing the Pilot stop, but ultimately hit the Pilot. After the Traverse swerved, Appellant struck the Pilot. The LS then struck Appellant from behind.

**{¶4}** Appellant has uninsured motorist benefits under a policy with Appellee, which entitles him to uninsured motorist coverage from the "owner or operator" of:

A motor vehicle who remains unidentified but independent corroborative evidence exists to prove that bodily injury was proximately

caused by the intentional or negligent actions in the operation of a motor vehicle by the unidentified operator of the motor vehicle.

State Farm Policy Form 9835B Uninsured Motor Vehicle Coverage, p. 14.

**{¶5}** Appellant filed the instant action against Appellee seeking coverage under the uninsured motorist portion of his insurance policy with Appellee.[1] Appellee moved for summary judgment. Appellee conceded the negligence of the uninsured motorist, but argued Appellant was negligent as a matter of law by violating R.C. 4511.21, Ohio's assured clear distance statute, and Appellant's own negligence was the sole proximate cause of his injuries. Appellee also argued the Pilot driver's ability to stop, coupled with Appellant's negligence, broke the chain of causation from the driver of the pickup.

**{¶6}** The trial court granted the motion for summary judgment, finding as follows:

Plaintiff has acknowledged seeing the Pilot, the parties do no [sic] dispute that the Pilot was continuously traveling in the lane of travel until he came to a stop and did not suddenly swerved [sic] into Plaintiff's lane of travel. Plaintiff was required, at all times, to maintain a safe distance from the vehicle in front of him. The Court notes that the statute does not state a specific distance, as that distance may vary, including on the evening in question, when it was dark, rainy, and the roadway was wet.

---

[1] Count one of Appellant's complaint alleged the driver of the Saturn LS was negligent in striking him from the rear. This claim was settled and dismissed, and the driver of the Saturn is not a party to the instant appeal.

While the barbecue grill was undoubtedly the trigger for the chain reaction car accident, had Plaintiff maintained that safe distance as required by the statute, he would have been able to avoid striking the Pilot. He failed to do so.

Therefore, Plaintiff has an uninsured motorist coverage policy that will only cover injuries proximately caused by the intentional or negligent actions of an unidentified driver. The driver of the pickup truck is unidentified, but the facts show that his negligence in failing to properly secure his barbeque grill *did not* cause the injuries to Plaintiff. Instead, Plaintiff had a legal obligation to maintain a safe enough distance between himself and the car(s) in front of him to avoid hitting said cars. No exception to this legal duty exists.

Judgment entry, October 26, 2017, pp.3-4.

{¶7} It is from that entry Appellant prosecutes this appeal, assigning as error:

"THE TRIAL COURT ERRONEOUSLY GRANTED SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY. REASONABLE MINDS COULD COME TO DIFFERENT CONCLUSIONS, AND QUESTIONS OF FACT REMAIN WHETHER THE NEGLIGENCE OF THE UNIDENTIFIED/UNINSURED MOTORIST WAS A PROXIMATE CAUSE OF PLAINTIFF-APPELLANT ALBERT HALE'S INJURIES."

{¶8} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36 (1987). As such, we must refer to Civ. R. 56(C) which provides in pertinent part:

Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶9} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying

those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates that the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating that there is a genuine issue of material fact for trial. *Vahila v. Hall*, 77 Ohio St.3d 421, 429, 1997-Ohio-259, *citing Dresher v. Burt*, 75 Ohio St.3d 280, 1996-Ohio-107.

{¶10} Appellant first argues whether he violated R.C. 4511.21 is an issue of material fact. R.C. 4511.21(A) states:

No person shall operate a motor vehicle, trackless trolley, or streetcar at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions, and no person shall drive any motor vehicle, trackless trolley, or streetcar in and upon any street or highway at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead.

{¶11} A violation of said statute depends on whether there is evidence the driver collided with an object which (1) was ahead of him in his path of travel, (2) was stationary or moving in the same direction as the driver, (3) did not suddenly appear in the driver's

path, and (4) was reasonably discernible. *See Ziegler v. Wendel Poultry, Inc.*, 67 Ohio St.3d 10, 12, 615 N.E.2d 1022 (1993); *Junge v. Brothers*, 16 Ohio St.3d 1, 3, 475 N.E.2d 477 (1985); *Blair v. Goff-Kirby Co.*, 49 Ohio St.2d 5, 7, 358 N.E.2d 634 (1976).  Violation of the assured clear distance statute constitutes negligence per se.  *Cox v. Polster*, 174 Ohio St. 224, 226, 188 N.E.2d 421, 423 (1963).

**{¶12}** Where conflicting evidence is presented as to any of the elements necessary to establish a violation of R.C. 4511.21(A), a jury question is created. *Ziegler, supra,* at 12. "Especially in cases involving the assured-clear-distance statute, which, by definition, require evaluation of the conduct of the driver in light of the facts surrounding the collision, the judgment of a jury is more likely to achieve a fair result than is a judge-made rule of law." *Blair*, *supra*, at 9.

**{¶13}** Appellant argues reasonable minds could reach differing conclusions in the instant case as to whether the Pilot was reasonably discernable.

**{¶14}** Whether an object is discernable is not the same as whether it is visible:

> The word "discernible" ordinarily implies something more than "visible." "Visible" means perceivable by the eye whereas "discernible" means mentally perceptible or distinguishable,—capable of being "discerned" by the understanding and not merely by the senses.'" (Emphasis sic.) *McFadden v. Elmer C. Breuer Transp. Co.,* 156 Ohio St. 430, 441–442, 103 N.E.2d 385 (1952), quoting *Colonial Trust Co., Admr. v. Elmer C. Breuer, Inc.*, 363 Pa. 101, 69 A.2d 126 (1949). Accordingly, " '[d]iscernible' means cognitive awareness while 'visible' means merely

capable of being seen." *Tritt v. Judd's Moving & Storage, Inc.*, 62 Ohio App.3d 206, 217, 574 N.E.2d 1178 (10th Dist.1990).

*Cleveland Elec. Illum. Co. v. Major Waste Disposal*, 11th Dist. Lake No. 2015-L-104, 2016-Ohio-7442, 74 N.E.3d 689, ¶ 25.

**{¶15}** In cases in which a collision occurred at night or during extraordinary weather conditions that reduced visibility, the Ohio Supreme Court has held a jury question existed as to whether the object that the driver hit was reasonably discernible. *Blair, supra* (dark, misty, rainy night); *Sabo v. Helsel,* 4 Ohio St. 3d 70, 446 N.E.2d 457 (1983) (dense fog); *Tomlinson v. Cincinnati*, 4 Ohio St .3d 66, 446 N.E.2d 454 919 (1983) (darkness); *Junge, supra* (darkness, highway unlighted); *Sharp v. Norfolk & W. Ry. Co.*, 36 Ohio St.3d 172, 522 N.E.2d 528(1988) (darkness); *Ziegler, supra* (fog).

**{¶16}** The Ohio Supreme Court noted in *Blair* the issue of discernability is often a jury question:

Furthermore, as the policy reasons behind holding drivers negligent per se for collisions have become less compelling over the years, virtually all other states, whether their assured-clear-distance rules are statutory or judge made, have held discernibility to be a jury question.

For the foregoing reasons, we hold that whether an object is discernible under a given set of circumstances is a question of fact, and, when reasonable minds could reach different conclusions from the

evidence presented upon the question, a motion for a directed verdict upon that basis should be overruled.

*Blair, supra,* at 9-10.

{¶17} It is undisputed the accident in the instant case occurred after dark, with a rain-snow mixture falling from the sky. Appellant testified in his deposition he was following the Traverse approximately four car lengths behind, at a speed of 55 miles per hour. He testified as follows regarding the accident:

A. I remember the car in front of me making a bizarre left twist off to the left side of the road, distracted me, and I looked up at the vehicle that was sitting on the expressway.

*****

Q. And as soon as that happened, after that car cleared off to the left, you were able to see a car in front of it?

A. Yes.

Q. Okay. What was that car doing?

A. Nothing.

Q. It was not moving?

A. No.

Q. Were the brake lights on?

A. No.

Q. Were there – were there taillights on it?

A. Taillights.

Q. So the car – the lights were on?

A. Yes.

Q. But you couldn't see that any brake lights were on?

A. No brake lights.

Q. All right. And you specifically recall that there were no brake lights?

A. I know there was [sic] no brake lights.

Q. Okay. What kind of car was that, if you recall?

A. It was a Honda Pilot.

Q. Okay. So when the car that you were following moves over to the left, you now see the Honda Pilot sitting in the roadway not moving; is that correct?

A. Yes. When I looked back, I noticed all of this, distracted me, startled me, and I looked back and that car was sitting there.

Q. Okay. And were you able to perceive that it was not moving even though it didn't have any brake lights on?

A. Yes.

Q. You could tell it was stopped?

A. When I got – I was getting closer to it, yes.

Q. How far away was that Pilot when you first saw it?

A. I couldn't tell you.

Q.  Was it – was it more than four car lengths?

A. No.

Q.  So it was actually closer at this point than what you had been following the other car?

A. Yes.

***

Q.  Did you have time to use your brakes?

A. I don't recall.

***

A.  When the car in front of me went left, it exposed me to the danger.

Q.  Okay.

A. I had no time.

Hale Deposition, pp. 30-34, 68.

{¶18} In support of the trial court's decision, Appellee first cites *Cox v. Polsten,* 174 Ohio St. 224, 226, 188 N.E.2d 421,423 (1963), in which the Ohio Supreme Court held:

Where three motor vehicles are proceeding in the same direction in the same lane of traffic, the fact that the first car comes to a sudden stop causing the second car to swerve out of its lane of traffic does not create a sudden emergency as to the third car so as to relieve the driver thereof of

from [sic] compliance with the assured-clear-distance statute in relation to the stopped first car.

{¶19} However, the instant case does not involve a defense of sudden emergency. In *Cox,* the plaintiff was in the first car which stopped, the second car swerved, and the third car, driven by the defendant, was unable to stop, striking the plaintiff's car. In the instant case, Appellant was the plaintiff, and was in the position of the defendant in *Cox.* As the plaintiff in this case, the defense of sudden emergency was not pertinent to Appellant's case, and we thus find *Cox* inapplicable. In *Cox,* the court did not discuss whether the first car was discernable, but only whether the trial court erred in instructing the jury on the defense of sudden emergency caused by the second car swerving out of the way of the plaintiff.

{¶20} Appellee argues because Hale observed the Pilot was stopped and was able to determine the car had on taillights but no brake lights, he has admitted discernability. Appellee cites several cases in support of its claim summary judgment was appropriate under this set of facts. However, the cases cited by appellee involve distinct facts from those at issue in the case sub judice. *Treece v. Mullet*, 5th Dist. Holmes No. CA-406, 1990 WL 120758 (August 6, 1990) (driver rounded a bend and observed stationary vehicle but was unable to stop); *Mitchell v. Kuchar,* 8th Dist. Cuyahoga No. 85363, 2005-Ohio-3717 (car was directly ahead of plaintiff and he followed it for a minute before the accident); *Ciesielczyk v. Ogg,* 5th Dist. Stark No. 2000CA00359, 2001 WL 967896 (August 20, 2001) (plaintiff drove behind defendant for half a mile before accident).

{¶21} We find reasonable minds could reach different conclusions as to whether the stopped Pilot was reasonably discernable to Appellant. A mixture of rain and snow was falling, and it was dark outside. The vehicle in front of Hale suddenly swerved left, creating a distraction. Prior to the Traverse moving out of the way, Appellant could not see the Pilot. When he was able to see the Pilot, its taillights were visible but it did not have brake lights on. At some point, Hale testified he was able to determine the Pilot was stopped, but it is not clear from his testimony at what point he was able to discern the Pilot was not moving. He testified he had no time. When considered in the light most favorable to Appellant as is required by Civ. R. 56, from all the circumstances surrounding the accident, we find reasonable minds could differ as to whether the Pilot was discernable. Therefore, we find the court erred in finding Appellant was negligent per se for violating the assured clear distance statute.

{¶22} Appellant next argues the court erred in granting summary judgment because even if he was negligent, an issue of comparative negligence was created which must be determined by a jury. Appellee argues in response Appellant's own negligence was the sole proximate cause of his injuries. Appellee argues the Pilot's ability to come to a complete stop, followed by Appellant's negligence in striking the Pilot, constituted an intervening cause which relieved the driver of the pickup from liability for his negligence.

{¶23} A defendant may be relieved of liability for his negligent conduct if an intervening act breaks the causal connection between the defendant's negligence and the injury. *Berdyck v. Shinde*, 66 Ohio St.3d 573, 613 N.E.2d 1014 (1993), paragraph six of the syllabus. A break will occur when another conscious and responsible agency, which could or should have eliminated the hazard, intervenes between an agency creating a

hazard and an injury resulting therefrom. *Hurt v. Charles J. Rogers Transp. Co.*, 164 Ohio St. 323, 130 N.E.2d 824 (1955), paragraph one of the syllabus.

**{¶24}** The test for such a break in causation is "whether the original and successive acts may be joined together as a whole, linking each of the actors as to the liability, or whether there is a new and independent act or cause which intervenes and thereby absolves the original negligent actor." *Cascone v. Herb Kay Co.*, 6 Ohio St.3d 155, 160, 451 N.E.2d 815 (1983). An intervening act is "new" if it came into operation after the original negligence and could not reasonably have been foreseen. *Reed v. Weber*, 83 Ohio App.3d 437, 441, 615 N.E.2d 253 (1992). An intervening act constitutes an "independent" cause if the intervening act was capable of producing the injury irrespective of the original negligence, was not set in motion by the original negligence, and was not simply a condition on or through which the original negligence operated to produce the injurious result. See *Mudrich v. Standard Oil Co.*, 153 Ohio St. 31, 38, 90 N.E.2d 859 (1950), citing *Mouse v. Cent. Savings & Trust Co.*, 120 Ohio St. 599, 605-606, 167 N.E. 868 (1929).

**{¶25}** Appellee cites to several cases in support of its argument summary judgment was appropriate on the issue of proximate cause because the ability of the Pilot to stop, coupled with Appellant's own negligence, constituted an intervening cause relieving the pickup driver of liabiliity. In *Mitchell v. Kuchar, supra,* Kuchar, who was intoxicated, fell asleep at the wheel, resulting in his car hitting a concrete barrier, traveling across the lanes of traffic, and coming to rest in the grass on the side of the road. Rizzo slowed down to avoid Kuchar's vehicle, and was rear-ended by Mitchell. The Court of Appeals for the Eighth District held Mitchell's failure to maintain an assured clear distance

broke the chain of causation related to Kuchar's negligent driving, constituting an independent, intervening act which absolved Kuchar of liability for the collision between Mitchell and Rizzo. 2005-Ohio-3717, ¶11. The court noted by maintaining an assured clear distance, Rizzo was able to stop and avoid impact with Kuchar's vehicle, and therefore as a matter of law, Kuchar was not proximately liable for Mitchell's injuries. *Id.* at ¶13.

{¶26} The Ninth District addressed a similar proximate causation issue in *Sabbaghzadeh v. Shelvey,* 9th Dist. Lorain No. 98CA007244, 2000 WL 673322 (June 14, 2000). In that case, a wooden display case fell from the back of a truck driven by Shelvey. The accident occurred at night. Cioffee was driving a dairy delivery truck behind Shelvey, and stopped to avoid hitting debris in his lane. After Cioffee had been stopped at least four to five minutes, he was struck from behind by a vehicle driven by Mofakhami, who died at the scene. The court found as a matter of law Mofakhami's failure to maintain assured clear distance was a new and independent cause of his injury, which was not set in motion by Shelvey's misconduct. *Id.* at *6. He arrived on the scene at least four to five minutes after the display case fell from Shelvey's truck, and other traffic had either slowed or was passing around the debris without incident. *Id.* Although it may have been foreseeable Shelvey's negligence would bring traffic to a halt, it was not reasonably foreseeable a motorist would proceed more than 2500 feet without making any effort to avoid a large delivery truck in its path. *Id.*

{¶27} Appellee cites extensively in its brief to *Didier v. Johns,* 114 Ohio App. 3d 746, 684 N.E.2d 337 (2nd Dist. Montgomery 1996). In that case, Didier was operating a motorcycle, following a bus. Johns was operating a vehicle in the opposite direction, and

fell asleep at the wheel, crossing the center line.  The bus was required to stop quickly, and Didier hit the bus from behind.  The court found comparative negligence did not apply, as the action of the bus driver in bringing his vehicle to a stop was not negligent, and this non-negligent act broke the chain of causation between John's negligence and Didier's negligence.  *Id.* at 753, 684 N.E.2d at 341.

**{¶28}** However, the Court of Appeals for the Second District subsequently held its decision in *Didier* was incorrect:

Our rationale in *Didier* was flawed. "A break will occur when there intervenes between an agency creating a hazard and an injury resulting therefrom another conscious and responsible agency which could or should have eliminated the hazard." *Berdyck v. Shinde,* at 585, 613 N.E.2d 1014. In *Didier,* the hazard was created when the motorist allowed his vehicle to cross into the path of the school bus. If the school bus driver could or should have eliminated the hazard, but failed to do so, his intervening negligence could relieve the motorist of liability to the motorcyclist for the injuries he suffered. But, there was no basis in the record to find that the school bus driver was negligent. Indeed, we wrote that "the action of the bus driver in bringing his vehicle to a natural stop was not negligent." *Didier,* at 753, 684 N.E.2d 337. It does not follow that a non-negligent intervening act will break the chain of causation between a prior negligent act and subsequent injuries that proximately result from that act. The Restatement holds that the intervening act must be "wrongful." The non-negligent conduct of an

intervening "actor" has no effect on the respective negligences of the plaintiff and the defendant or defendants, which must instead be resolved on comparative negligence principles. *Shinaver v. Szymanski.*

Our rationale in *Didier* also suffers from another major flaw. We held that the plaintiff motorcyclist was not entitled to a comparative negligence instruction, rejecting the "seductively appealing, but wholly pernicious, 'but for' analysis" in *Fleming* and *Baum,* regarding the issue of probable cause. We wrote: "The *legal* analysis must focus on the direct *per se* negligence of the violator of the assured clear distance rule, as distinct from a *physical* analysis made pursuant to the 'but for' theory." *Id.* at 754, 460 N.E.2d 701. In other words, the fact that the plaintiff was negligent per se is conclusive of the issue of proximate cause. However, that pronouncement we made in *Didier* is the very view that the Supreme Court rejected in *Smiddy* when it wrote:

"Although we hold that appellee's decedent was negligent *per se,* such holding does not mean that his negligence was the sole proximate cause, or even a proximate cause, of the collision that resulted in his death. Construing the evidence most favorably toward appellee, we hold that reasonable minds could differ as to the proximate cause(s) of the collision. Similarly, the issue of comparative negligence is for the jury if it finds that Hesketh [a motorist who had stopped and was struck by Smiddy's vehicle] was negligent and that the negligence of both Hesketh and Smiddy were proximate causes of the accident." *Id.,* at 40 (internal citations omitted.)

We now believe that our holding in *Didier* was incorrect. There was no intervening wrongful force between the prior negligence of the defendant motorist whose vehicle crossed the center line of the road and the plaintiff motorcyclist's subsequent assured clear distance violation that could or should have prevented the injuries the plaintiff motorcyclist suffered when he struck the school bus. The plaintiff's assured clear distance violation was negligence per se, but its effect on the liability of the other motorist should have been determined on the basis of comparative negligence principles, and was not a basis to find the motorcyclist's negligence per se was the sole proximate cause of the accident. The practical effect of that finding was to hold that, as a matter of law, any prior negligent act is too remote to be a proximate cause of injuries when any other concurrent negligence occurs. That outcome confounds the basic rule that concurrent negligences may result in joint liabilities for both tortfeasors when each is a proximate cause of injuries. *Berdyck v. Shinde.* Therefore, our holding in *Didier* will be limited to its facts.

*Crosby v. Radenko*, 2nd Dist. Montgomery No. 24343, 2011-Ohio-4662, ¶¶ 51-54.

**{¶29}** In *Crosby,* a tractor-trailer driven by Radenko pulled to a stop in the berm due to mechanical trouble. He subsequently attempted to reenter the same lane of travel, when a passenger vehicle came to a stop behind him, followed by a second tractor-trailer coming to a stop behind the passenger vehicle. Unable to stop, Crosby first veered into the left lane, lost control of her vehicle, veered back into the right lane, and collided with

Radenko.  The Court of Appeals held reasonable minds could conclude the chain of events set in motion by Radenko unfolded in rapid succession in a continuous and unbroken fashion, with a result the causal connection between Radenko's negligence and Crosby's negligence was not broken, and the effect of their concurrent negligence must be resolved by the jury on comparative negligence principles.  *Id.* at ¶56.

{¶30}  In support of finding its prior decision in *Didier* to be incorrect, the *Crosby* court cited to two similar cases from the Tenth Appellate District.  In *Baum v. Augenstein,* 10 Ohio App. 3d 106, 460 N.E.2d 701 (10th Dist. Franklin 1983), a pickup truck dropped a cattle feeder on to the roadway.  While Baum was able to stop her vehicle, she was almost immediately struck from behind by Augenstein.  The Court of Appeals found reasonable minds could conclude the negligence of the pickup truck driver and Augenstein combined to proximately cause Baum's injuries.  *Id.* at 107, 460 N.E.2d at 703.  Reasonable minds could conclude the chain of events set in motion by the pickup truck driver's negligence in failing to secure the feeder unfolded in rapid succession in a continuous and unbroken fashion, with a result the causal connection was not broken.  *Id.*

{¶31}  Similarly, in *Grange v. Mut. Cas. Co. v. Fleming,* 8 Ohio App. 3d 164, 456 N.E.2d 816 (10th Dist. Franklin 1982), the lead driver stopped suddenly, the middle car was able to stop, but the third car in the line of vehicles was unable to stop, crashing into the middle car and pushing it into the lead vehicle.  The court held reasonable minds could find the first driver by stopping his vehicle in a continuous lane of traffic would anticipate that, although the vehicle immediately behind him would be able to stop, a third vehicle may not be able to stop.  *Id.* at 167, 456 N..E.2d at 819. The court held reasonable minds could therefore conclude the third driver's negligence was set in motion by the first

driver's negligence in suddenly stopping in the roadway, and the causal connection was not broken. *Id.*

**{¶32}** Applying the reasoning of *Crosby, Baum,* and *Grange* to the instant case, we find reasonable minds could differ as to whether the ability of the Pilot to stop, followed by any potential finding of negligence on the part of Appellant in violating the assured clear distance statute, broke the chain of causation of the pickup driver's negligence in failing to secure the grill. As in the cases cited immediately above, and distinguishable from *Sabbaghzadeh, supra,* the chain of events set in motion by the pickup driver's failure to secure his load unfolded in rapid succession in a continuous and unbroken fashion. Reasonable minds could conclude the driver of the pickup would anticipate that, although a vehicle directly behind him would be able to stop if the grill fell out of the truck, other vehicles following behind might not be able to see the hazard and stop, particularly as the accident occurred on an interstate highway with three lanes proceeding in his direction, after dark, with a rain-snow mixture falling. Reasonable minds could differ as to whether Appellant's failure to stop was a new or independent act or cause of his collision with the Pilot, irrespective of the pickup truck's negligence in failing to secure the grill. Reasonable minds could find this rapid succession accident was set in motion by the negligence of the pickup truck driver resulting in a continuous, unbroken chain of reaction. We therefore find the court erred in concluding as a matter of law the causal connection was broken by Appellant's negligence, and if the jury finds Appellant negligent per se for violating the assured clear distance statute, the effect of the concurrent negligence of Appellant and the unidentified driver of the pickup truck must be resolved by the jury on comparative negligence principles.

**{¶33}** The assignment of error is sustained.  The summary judgment of the Stark County Common Pleas Court is reversed, and this case is remanded to that court for further proceedings according to law and this Opinion.

By: Hoffman, J.

Gwin, P.J.  and

Wise, Earle, J. concur