[Cite as *March v. Steed Ents., Inc.*, 2013-Ohio-4448.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| WILLIAM C. MARCH | : | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Sheila G. Farmer, J. |
| Plaintiff-Appellant | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. CT2012-0058 |
| STEED ENTERPRISES, INC. DBA | : |  |
| THE BARN, ET AL | : |  |
|  | : | O P I N I O N |
| Defendant-Appellee |  |  |

CHARACTER OF PROCEEDING:     Civil appeal from the Muskingum County
Court of Common Pleas, Case No.
CC2011-0346

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     October 2, 2013

APPEARANCES:

For Plaintiff-Appellant     For Defendant-Appellee

WARD COFFMAN, III     JAMES GLOWACKI
604 Main Street     JAMES IMBRIGIOTTA
Box 159     WILLIAM KOTAR III
Zanesville, OH 43702-0159     7550 Lucerne Drive, Ste. 408
Middleburg Heights, OH 44130

*Gwin, P.J.*

**{¶1}** Plaintiff-appellant, William G. March ["March"] appeals the Muskingum County Court of Common Pleas Judgment Entry filed November 5, 2012 that granted appellee Steed Enterprises, Inc., d.b.a. The Barn, William E. Steed, Paulette R. Steed, Dustin Steed, James Travis and Todd A. Morgan's combined motion for summary judgment.

*Facts and Procedural History*

**{¶2}** This case arises from the assault and battery of William March by a "John Doe" on the night of June 26, 2010. The incident is alleged to have occurred in the parking lot of a restaurant and bar named The Barn.

**{¶3}** March filed suit against James A. Travis (Tiny) and Todd A. Morgan (collectively, "the bouncers"). March alleges negligence, battery and assault against the bouncers. March alleges premises liability, negligent hiring and retention of the bouncers, spoliation of evidence, and *respondeat superior* against The Barn. March filed suit against William and Paulette Steed who own the corporation Steed Enterprises, Inc., d.b.a. The Barn. The Steeds also own the parking lot where the incident occurred. Dustin Steed is alleged to be an owner of the corporation and is a named party. However, Dustin Steed is the general manager of The Barn and has no ownership interest in The Barn. Dustin Steed was not on duty on June 26, 2010 and has no personal knowledge of the events that night.

**{¶4}** March has been going to The Barn since 2004. He would go there once or twice on weekends to eat and drink. While the young crowd could get a little rowdy on weekends, March never had any fear for his safety.

{¶5}  On June 26, 2010, March drove into Zanesville around four or five in the afternoon. He had one beer at a local restaurant before heading to The Barn to meet some friends. March knew quite a few individuals at The Barn and he milled about having conversations with other patrons. They were drinking beers and well drinks. March always drank tall beers. He does not recall how many drinks he had, but he became intoxicated. It was loud on the patio and everyone looked like he or she were having a good time.

{¶6}  March became aware of yelling. He does not recall talking to the individuals who yelled at him. March recalls that Todd Morgan, a bouncer, told him that some patrons heard March using racial slurs and Morgan was going to escort him out the premises. Morgan testified, however, that he did not hear any argument or any racial slurs  and that he did not ask March to leave the bar.

{¶7}  Morgan walked March into the main bar area and handed March over to "Tiny" (James Travis; another bouncer) who escorted March out the rear exit. March testified in his deposition that he walked outside the rear exit of the Barn and was feeling in his pocket for keys and then woke up on the ground. March approximated that he was twenty feet from the rear entrance of the bar when he was punched. March does not know if the person that struck him was the same person who yelled at him the inside the bar. When he awoke, he noticed that his ankle had been injured. March does not recall giving EMS a hard time when EMS attempted to assist him. He also does not recall giving the police officer any false information. March had a BAC of .187.

{¶8}  James Darrell Travis' nickname is "Tiny." He worked security at The Barn for six years. In his deposition, Travis testified the protocol for rowdy patrons is to ask

the patron to walk out and if they do not leave voluntarily, the bouncers are to call the police. On June 26, 2010, Travis became aware of commotion at the edge of the patio and he went to investigate. Travis observed March standing in front of "John Doe" repeatedly calling John Doe a "nigger" and a "faggot."[1] The two bouncers, Travis and Morgan, separated March and Doe, because Doe appeared to be becoming frustrated.

{¶9}   Travis and Morgan decided to have the patrons exit the premises via separate doors. John Doe was escorted to the Linden exit and March was escorted to the door that exits into the rear parking lot. Travis did not feel that March or John Doe was a threat to anyone, but because the pair was causing a scene, they had to go. Travis testified they threw them both out in an abundance of caution.

{¶10}  Thereafter, John Doe appeared to be walking towards a car when March approached him. March walked towards Doe after exiting through the back door. March started calling Doe the same things that led him to be ejected; at this point Doe turned and hit him once. Travis was fifty feet away from them and March was yelling things loud enough for Travis to hear. After March was struck, Travis ran over and stepped in front of John Doe, backed him away from March. John Doe calmed down. Travis told John Doe to go and that is the last that he saw of John Doe. When the police arrived, March gave Officer Halsey a false social security number. March also gave the paramedics a hard time. Ultimately, it was determined that March suffered a broken leg that night, allegedly in the altercation with Doe.

{¶11}  The appellees jointly filed a motion for summary judgment. Appellees also filed the depositions of March, Travis, Dustin Steed, William Steed and Paulette Steed

---

[1] The true identity of this person has never been discovered; he left the scene before police arrived and was allegedly not a regular patron at The Barn.

on August 30, 2012. March filed the deposition testimony of Todd Alan Morgan on May 17, 2012. The trial court granted summary judgment to all the Defendants-Appellees by Judgment Entry filed November 5, 2012.

*Assignments of Error*

{¶12}  March raises two assignments of error,

{¶13}  "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN GRANTING THE DEFENDANTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT SINCE THERE EXISTS A GENUINE DISPUTE OF MATERIAL FACTS.

{¶14}  "II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN NOT FINDING THAT THE DEFENDANTS-APPELLEES HAD A DUTY TO PROVIDE SECURITY TO PROTECT THEIR PATRONS AS A MATTER OF LAW NOTWITHSTANDING THE EXISTENCE OF A GENUINE DISPUTE OF MATERIAL FACTS."

*Standard of Review*

{¶15}  This matter reaches us upon a grant of summary judgment. Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36, 506 N.E.2d 212(1987). As such, we must refer to Civ.R. 56(C).

{¶16}  Civ.R. 56(C) states that summary judgment shall be rendered forthwith if,

The pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue

as to any material fact and that the moving party is entitled to judgment as a matter of law.

**{¶17}** Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138(1992).

**{¶18}** Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 629, 605 N.E.2d 936(1992), *citing Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 65-66, 375 N.E.2d 46(1978).

**{¶19}** In *Welch v. Ziccarelli,* 11th Dist. Lake No. 2006-L-229, 2007-Ohio-4374, the court provided the following analysis,

> Since summary judgment denies the party his or her "day in court" it is not to be viewed lightly as docket control or as a "little trial." The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party.

> In *Dresher v. Burt*, the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The

evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in *Misteff v. Wheeler* (1988), 38 Ohio St.3d 112.

The court in *Dresher* went on to say that paragraph three of the syllabus in *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, cited by Mr. Ziccarelli, is too broad and fails to account for the burden Civ.R. 56 places upon a moving party. The court, therefore, limited paragraph three of the syllabus in *Wing* to bring it into conformity with *Misteff.*

The Supreme Court in *Dresher* went on to hold that when neither the moving nor nonmoving party provides evidentiary materials demonstrating that there are no material facts in dispute, the moving party

is not entitled a judgment as a matter of law as the moving party bears the initial responsibility of informing the trial court of the basis for the motion, "and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Id. at 276.

*Welch v. Ziccarelli,* 2007-Ohio-4374, ¶ 36-37, 40-42.; *Egli v. Congress Lake Club* 5th Dist. No.2009CA00216, 2010-Ohio-2444 at ¶ 24-26.

**{¶20}** In deciding whether there exists a genuine issue of fact, the evidence must be viewed in the nonmovant's favor. Civ.R. 56(C). Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion. *Turner v. Turner*, 67 Ohio St.3d 337, 341, 617 N.E.2d 1123, 1127(1993).

**{¶21}** Appellate review of summary judgments is *de novo. Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241(1996); *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35,506 N.E.2d 212(1987). We stand in the shoes of the trial court and conduct an independent review of the record. As such, we must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court is found to support it, even if the trial court failed to consider those grounds. See *Dresher,* supra; *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42, 654 N.E.2d 1327(9th Dist. 1995).

**{¶22}** March's first and second assignments of error relates to the propriety of the trial court's granting of summary judgment in favor of the appellees. Because March's first and second assignments of error raise common and interrelated issues, we will address the arguments together.

I & II

{¶23} March contends that he was a business invitee because he never left the property owned by The Barn, the corporation that owned The Barn and the Steeds. He further argues that his status cannot change because the bouncers' decision to remove him from the bar was arbitrary, capricious and inconsistent with the bar's own policy for handling rowdy patrons. March claimed that the appellees intentionally or negligently placed him in a potentially dangerous situation by not either escorting him to his car or holding John Doe until March had exited the parking lot.

{¶24} In order to sustain an actionable claim for negligence, the complaining party must establish (1) the existence of a duty, (2) a breach of that duty, and (3) an injury proximately resulting therefrom. *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.,* 81 Ohio St.3d 677, 680, 1998-Ohio-602, 693 N.E.2d 271.

{¶25} The existence of a duty is "a question of law for the court to decide on a case-by-case basis." *Hickman v. Warehouse Beer Systems, Inc.*, 86 Ohio App.3d 271, 273, 620 N.E.2d 949(2nd Dist. 1993) (citations omitted) (emphasis omitted).

{¶26} The legal duty that landowners owe a person who enters their land depends upon the status of the entrant, i.e., trespasser, licensee, or invitee. *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 315, 662 N.E.2d 287 (1996). "Invitees are persons who rightfully come upon the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner." Id. In contrast, a licensee is a person who enters another's property "by permission or acquiescence, for his own pleasure or benefit, and not by invitation." *Light v. Ohio Univ.,* 28 Ohio St.3d 66, 68, 502 N.E.2d 611 (1986).

**{¶27}** In tort law, there is no duty to control the conduct of a third person to prevent him from causing physical harm to another; however, a defendant may owe a duty to a plaintiff based upon a special relationship between the defendant and the third person. *Gelbman v. Second Natl. Bank of Warren*, 9 Ohio St.3d 77, 79, 458 N.E.2d 1262 (1984); *Commerce & Industry Ins. Co. v. Toledo,* 45 Ohio St.3d 96, 98, 543 N.E.2d 1188, 1192 (1989). "Relationships which result in a duty to protect others include: 1) common carrier and its passengers; 2) innkeeper and guests; 3) possessor of land and invitee; 4) custodian and individual taken into custody; and 5) employer and employee." *Reddick v. Said*, 11th Dist. No. 2011–L–067, 2012–Ohio–1885, ¶ 38 quoting *Jackson v. Forest City Ents.*, 111 Ohio App.3d 283, 285, 675 N.E.2d 1356 (8th Dist.1996), citing 2 Restatement of the Law 2d, Torts (1965), 116, at Section 314(A). "Relationships that may give rise to a duty to control a third person's conduct include the following: (1) parent and child; (2) master and servant; and (3) custodian and person with dangerous propensities." *Reddick*, at ¶ 38 *quoting Hall v. Watson*, 7th Dist. Mahoning No. 01 CA 55, 2002–Ohio–3176, ¶ 16.

**{¶28}** A business owner and his invitee are considered a "special relationship" which may impose a duty on the property owner. *Simpson v. Big Bear Stores Co.*, 73 Ohio St.3d 130, 134, 652 N.E. 2d 702(1995). However, the duty of a business owner or occupier to warn or protect its business invitees from the criminal acts of third parties extends only to those cases where "the business owner knows or should know that there is a substantial risk of harm to its invitees on the premises in the possession and control of the business owner." Id. at syllabus. "Thus, where an occupier of premises for business purposes does not, and could not in the exercise of ordinary care, know of a

danger which causes injury to his business invitee, he is not liable therefor." *Howard v. Rogers*, 19 Ohio St.2d 42, 47, 249 N.E.2d 804(1969) (citations omitted).

**{¶29}** Whether a duty exists depends on the foreseeability of injury. *Menifee v. Ohio Welding Products, Inc.,* 15 Ohio St.3d 75, 77, 472 N.E.2d 707, 710 (1984). Injury is foreseeable if a defendant knew or should have known that his act was likely to result in harm to someone. *Mudrich v. Standard Oil Co.*, 153 Ohio St. 31, 39, 90 N.E.2d 859, 863 (1950).

**{¶30}** In general, Ohio appellate courts have adopted one of two tests to determine whether a criminal act by a third party is foreseeable. The "prior similar acts" test "focuses on the defendant's knowledge of past similar incidents," whereas the broader "'totality of the circumstances' test considers evidence of other criminal activity at or near the location of the business." *Williams v. Prospect Mini Mart,* 11th Dist. No. 2002-L-084, 2003-Ohio-2232, at ¶23 (citations omitted). The totality of the circumstances includes reviewing the occurrence of previous similar crimes and the specifics of the incident itself, to determine whether the criminal act was foreseeable. *King v. Lindsay*, 87 Ohio App.3d 383, 387, 622 N.E.2d 396(10th Dist. 1993), quoting *Meyers v. Ramada Inn of Columbus*, 14 Ohio App.3d 311, 313, 471 N.E.2d 176(10th Dist. 1984). Because crime is so unpredictable, the totality of the circumstances must be "somewhat overwhelming" before a court will impose a duty to warn or protect upon a business owner. *Reitz v. May Co. Dept. Stores*, 66 Ohio App.3d 188, 193-194, 583 N.E.2d 1071(8th Dist. 1990). *Accord, Sullivan v. Heritage Lounge*, 10th Dist. Franklin No. 04AP-1261, 2005 WL 2160059 (Sept. 8, 2005), ¶25.

{¶31} In the case sub judice, our review of the "totality of the circumstances" reveals no evidence that the appellees knew, or should have known, that March or John Doe would have a physical confrontation in the parking lot.

{¶32} March himself testified in his deposition that there was merely yelling and no threats of any kind were made before the parties were asked to leave the premises. There was no evidence presented that a fight was imminent inside the bar prior to the bouncers asking the pair to leave the premises. Both March and John Doe were compliant and cooperative when asked to leave and while being escorted out of separate exits. March testified that he never saw the person who struck him and never heard any threats prior to waking up on the ground. According to his own version of the events, March had no indication that a fight was going to occur prior to the punch striking him.

{¶33} Travis testified in his deposition that he did not feel March was going to hit or assault John Doe. Travis asked March to leave because of "things he was saying and the fact he was causing a scene." Travis also did not feel that John Doe was a threat to anyone. Travis testifed that after being escorted out of the bar, March chose to follow Doe yelling profanities at him until Doe struck March one time. Morgan testified in his deposition that March and Doe "left quietly."

{¶34} There is no evidence that any of the appellees became aware, or were ever made aware that John Doe would strike March. Additionally, March presented no evidence showing that previous experiences at The Barn would have given its employees any reason to anticipate the assault.

**{¶35}** We conclude that the appellees did not owe March a duty to protect him from the criminal acts of John Doe. Further, March failed to prove that appellees owed a duty to provide security to protect their patrons from the criminal acts of third parties. Because March failed to demonstrate that any of the appellees owed a duty to him, we hold that the trial court did not err in granting the appellees' motion for summary judgment.

**{¶36}** March's first and second assignments of error are overruled.

**{¶37}** For the foregoing reasons, we affirm the judgment of the Muskingum County Court of Common Pleas granting summary judgment in favor of all appellees.

By Gwin, P.J.,

Farmer, J., and

Delaney, J., concur

_____
HON. W. SCOTT GWIN


_____
HON. SHEILA G. FARMER


_____
HON. PATRICIA A. DELANEY


WSG:clw 0905

[Cite as *March v. Steed Ents., Inc.*, 2013-Ohio-4448.]

IN THE COURT OF APPEALS FOR MUSKINGUM COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| WILLIAM C. MARCH | : | |
| | : | |
| Plaintiff-Appellant | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| STEED ENTERPRISES, INC. | : | |
| DBA THE BARN, ET AL | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | CASE NO. CT2012-0058 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Muskingum County Court of Common Pleas granting summary judgment in favor of all appellees is affirmed.  Costs to appellant.

_____
HON. W. SCOTT GWIN

_____
HON. SHEILA G. FARMER

_____
HON. PATRICIA A. DELANEY