[Cite as *Inskeep v. Columbus Zoological Park Assn.*, 2023-Ohio-288.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| | : | JUDGES: |
| CHERYL INSKEEP, ET AL. | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. William B. Hoffman, J. |
| Plaintiffs-Appellants | : | Hon. Patricia A. Delaney, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 22 CAE 05 0039 |
| COLUMBUS ZOOLOGICAL PARK | : | |
| ASSOCIATION, ET AL. | : | |
| | : | OPINION |
| Defendants-Appellees | | |

CHARACTER OF PROCEEDING:     Civil appeal from the Delaware County
Court of Common Pleas, Case No. 20 CV C
08 0345

JUDGMENT:                      Reversed and Remanded

DATE OF JUDGMENT ENTRY:        January 31, 2023

APPEARANCES:

For Defendants-Appellees          For Plaintiffs-Appellants

WILLIAM R. THOMAS                 JOEL M. SPITZER
163 N. Sandusky Street, St. 103   495 South State Street
Delaware, OH 43015                Marion, OH 43302

*Gwin, P.J.*

{¶1}    Appellants Cheryl and Larry Inskeep appeal the April 27, 2022 judgment entry of the Delaware County Court of Common Pleas granting appellees' motion for summary judgment.  Appellees are the Columbus Zoological Park Association dba the Columbus Zoo and Aquarium ("Zoo"), and Tessa Wilhelm.

*Facts & Procedural History*

{¶2}    On August 12, 2020, appellants filed a complaint against appellees for negligence and loss of consortium due to a golf cart hitting Mrs. Inskeep during a visit to the Zoo.  Appellees filed a motion for summary judgment on February 4, 2022.  Appellants filed a memorandum contra on March 31, 2022.  Appellees filed a reply brief on April 12, 2022.  The parties submitted the depositions of:  Mrs. Inskeep, Randall Judge, Vice President of Animal Health at the Zoo, Carman Wirtz, Senior Vice President of Human Resources at the Zoo, Detective Rashad Pitts from the Delaware County Sheriff's Office, and Tessa Wilhelm, a veterinary technician at the Zoo.  Appellees also submitted the affidavits of Nick Way, the Manager of Safety and Risk Management at the Zoo, and John Gannon, the Vice President and General Manager of Zoombezi Bay at the Zoo.

{¶3}    The following facts are found in the depositions and affidavits submitted by the parties.

{¶4}    On August 28, 2018, Mrs. Inskeep went to the Zoo with her daughter, Lori. Lori was walking a little bit ahead of her mother.  As they were going around a corner towards the Australia exhibit, Mrs. Inskeep felt something against her leg and the "next thing [she] remember[ed] is I was on the ground on my back, and my hand was up above my head."  When Lori first saw the golf cart, it was parked to her left, about five feet away.

There was nobody in or near it. There was a Zoo employee ahead of Lori and her mother on the right who was talking to another guest. Lori described the golf cart as "coming in behind her" and then her mother was down in the grass. Lori did not see the golf cart hit her mother. After the golf cart hit Mrs. Inskeep, it stopped at the curb. Lori saw a small child in the golf cart.

{¶5} Detective Pitts was dispatched to the Zoo on August 28th. The call initially came in that a drunk individual was operating a golf cart; however, when he arrived, he met with Zoo security and discovered a three-year old child operated an unattended golf cart. When he arrived, Mrs. Inskeep had already been transported to the hospital.

{¶6} On August 28, 2018, Wilhelm was operating a standard electric golf cart. She was retrieving signs she had set out for a veterinary technician conference that day. Initially, there was another employee in the golf cart with her; however, Wilhelm dropped her off at the "Shores" region of the Zoo. As Wilhelm was gathering the signs, she quickly hopped out of the golf cart, picked up each sign, and then hopped back into the cart. When she stopped to pick up the signs, she did not turn the golf cart off.

{¶7} Wilhelm stopped the golf cart near the kangaroo exhibit to pick up a sign. When she parked the golf cart, she left the ignition on, but took the key out of the ignition. She engaged the brake. While she was picking up the sign, someone stopped her to ask for directions. She heard the emergency brake unclick as she was talking to the guest. She turned around and saw Mrs. Inskeep had been hit by the golf cart and was in the grass. Wilhelm saw a child in the golf cart. Wilhelm then went to help Mrs. Inskeep and called security.

{¶8}   Wilhelm confirmed the particular golf cart she was operating that day could be operated without the key if the ignition was left on, and that she knew about this before the incident occurred.  When asked, "when you removed the key with the golf cart on, you knew that it could still be operated without the key," Wilhelm stated, "correct."

{¶9}   The Zoo's policy is that if golf carts are on Zoo grounds during hours that the Zoo is open to the public, they must be escorted, i.e., there must be a person walking in front of the vehicle to clear the path.  This is done for "safety reasons."  It is also Zoo policy that golf cart use during Zoo hours should be for emergencies only.  Wirtz stated that collecting signs is not an emergency.

{¶10}  The Zoo employees stated they are not aware of a guest either at the Zoo or its waterpark Zoombezi Bay ever getting into a golf cart without permission or consent.

{¶11}  Several individuals agreed that, at some point, there were little cars children could play in at the Zoo, but neither Judge nor Wilhelm could remember when the cars were there, or when they were removed.  Way stated there used to be "prop safari jeeps" with advertisements or logos on them that were used for promotional purposes.  Way averred these "safari jeeps" did not look similar to golf carts, and that one of the prop safari jeeps was last used in 2019 as an advertisement in the "Islands" portion of the Zoo.

{¶12}  The trial court issued a judgment entry granting appellees' motion for summary judgment on April 27, 2022.  The trial court found appellees were not liable for negligence, as a matter of law, because: (1) the Zoo did not owe a duty to Mrs. Inskeep because it did not, in the exercise of ordinary care, know of the danger and (2) appellants could not establish proximate cause because the action of the child was an intervening cause that was not reasonably foreseeable, thus breaking the chain of causation.

{¶13} Appellants appeal the April 27, 2022 judgment entry of the Delaware County Court of Common Pleas and assign the following as error:

{¶14} "I. THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BECAUSE WHETHER OR NOT DEFENDANT BREACHED ITS DUTY OF ORDINARY CARE IN THIS MATTER IS A GENUINE ISSUE OF FACT THAT SHOULD BE RESOLVED BY A JURY.

{¶15} II. THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BECAUSE WHETHER OR NOT THE THREE-YEAR-OLD BOY WAS A SUPERSEDING/INTERVENING CAUSE OF THE INJURY TO PLAINTIFFS' IS A GENUINE ISSUE OF FACT THAT SHOULD BE RESOLVED BY A JURY."

{¶16} In their assignments of error, appellants contend the trial court committed error in granting appellees' motion for summary judgment.

*Summary Judgment Standard*

{¶17} Civil Rule 56 states, in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds

can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

{¶18} A trial court should not enter summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning-Ferris Inds. Of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist. 1999).

{¶19} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

I. & II.

{¶20} In a negligence case, a plaintiff must prove that: (1) the defendant owed the plaintiff a duty; (2) the defendant breached that duty; (3) the plaintiff suffered harm; and

(4) the harm was proximately caused by defendant's breach of duty. *Mussivand v. David*, 45 Ohio St.3d 314, 544 N.E.2d 265 (1989).

{¶21} The trial court found the Zoo did not owe a duty to Mrs. Inskeep because it did not, in the exercise of ordinary care, know of the danger. The existence of a duty is a question of law for a court to decide on a case-by-case basis. *Id; March v. Steed Enterprises, Inc.*, 5th Dist. Muskingum No. CT2012-0058, 2013-Ohio-4448.

{¶22} In a premises liability case, the relationship between the owner of the premises and the injured party determines the duty owed. *Id.* In tort law, "there is no duty to control the conduct of a third person by preventing him or her from causing harm to another, except in cases where there exists a special relationship between the actor and the third party, which gives rise to a duty to control." *Simpson v. Big Bear Stores Co.*, 73 Ohio St.3d 130, 652 N.E.2d 702 (1995). One type of special relationship that may give rise to a duty to prevent a third person from causing harm to another is that between a business owner and invitee. *Id.* A business premises owner owes its invitees a duty to exercise ordinary care to maintain its premises in a reasonably safe condition and to warn invitees of known or latent dangers. *Holdshoe v. Whinery*, 14 Ohio St.2d 134, 237 N.E.2d 127 (1968). However, the owner and occupier of land is not an insurer of the safety of the patrons whom they invite on the land. *Id.*

{¶23} Both appellants and appellees agree that Mrs. Inskeep's relationship with the Zoo was that of a "business invitee." Accordingly, the Zoo owes Mrs. Inskeep a duty to exercise ordinary care and to protect her by maintaining the premises in a safe condition.

{¶24} Whether a duty exists depends on the foreseeability of the injury. *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St.3d 75, 472 N.E.2d 707 (1984). An injury is foreseeable if a defendant knew or should have known that his act was likely to result in harm to someone. *Mudrich v. Std. Oil Co.*, 153 Ohio St. 31, 90 N.E.2d 859 (1950). This Court has stated that the duty element of negligence may be established by common law, by legislative enactment, or by the particular circumstances of a given case. *Clifford v. Licking Baptist Church*, 5th Dist. Licking No. 09 CA 0082, 2010-Ohio-1464.

{¶25} Because of the lack of caselaw concerning the specific facts at issue in this case, appellees focus on caselaw concerning whether a landowner is shielded from liability for injuries caused by the criminal conduct of a third person.

{¶26} However, when this Court has examined whether, as a matter of law, there is sufficient evidence to demonstrate the foreseeability of a crime when a third person commits a criminal act, we focus on factors including the occurrence of previous similar crimes, the specifics of the criminal incident itself, and other criminal activity near the business. *March v. Steed Enterprises*, 5th Dist. Muskingum No. CT2012-0058, 2013-Ohio-4448. These factors do not apply in this situation because the third person (the child) did not commit a criminal act.

{¶27} Rather, we find the facts in this case more analogous to the Ohio Supreme Court case of *Holdshoe*, in which the Court found that the owner of a resort area owed a duty to a patron who was eating at a picnic table and was injured when a car owned by another patron rolled downhill and hit her. 14 Ohio St.2d 134, 237 N.E.2d 127 (1968). The Court noted there were specific circumstances that caused this duty to arise, including the fact that the owner made extensive improvements on the land to encourage

patronage, the total failure of the owner to take precautions when he knew vehicles were parking on a steeply sloped area, and the fact that the plaintiff introduced evidence that it was common in the area for owners of sloping land to use logs and fences to keep cars safely parked. *Id.*

{¶28} Appellees encourage this Court to focus solely on the fact that there is no evidence any prior similar incident occurred at the Zoo. However, with regards to third party liability, this Court has adopted the "totality of the circumstances" test, in which a court must examine the totality of the circumstances in determining whether the third party's actions were foreseeable, and determine whether a reasonably prudent person would have anticipated an injury was likely to occur. *McLaughlin v. Speedway, L.L.C.*, 5th Dist. Stark No. 2015CA00184, 2016-Ohio-3280. Additionally, this is not a case in which the person who was injured exceeded the scope of their invitation as a matter of law. *Wanko v. Downie Productions, Inc.*, 10th Dist. Franklin No. 99AP-1047, 2000 WL 1199235 (child was injured when he climbed into a golf cart and crashed into a truck; the court held the injured child exceed the scope of his invitation as a business invitee).

{¶29} Like in *Holdshoe*, when we utilize the totality of the circumstances test in this case, we find there are specific circumstances which caused a duty to arise. First, prior to the incident, Wilhelm knew this particular golf cart could be operated without the key if the ignition was left on and, despite this knowledge, she left the golf cart on when she hopped out of the cart to pick up each sign. Further, during the incident, Wilhelm violated two Zoo policies, i.e., there was no employee escorting the golf cart, and collecting signs was not an emergency. Upon our de novo review, we find the trial court committed error in finding, under the totality of the circumstances, the Zoo owed no duty

to Mrs. Inskeep as a business invitee. Further, we find there are genuine issues of material fact as to whether this duty was breached.

**{¶30}** The trial court also granted summary judgment for appellees because it determined appellants could not establish proximate cause, as the action of the child was an intervening cause that was not foreseeable. Appellees contend that, like criminal behavior, the child's act of jumping into the golf cart and hitting the gas pedal was an unforeseeable, intervening act which breaks the causal link between the Zoo and the injury suffered by Mrs. Inskeep.

**{¶31}** Negligent conduct is the proximate cause of an injury if the injury is the natural and probable consequence of the conduct. *Mussivand v. David*, 45 Ohio St.3d 314, 544 N.E.2d 265 (1989). An injury is the natural and probable cause of the negligent conduct if the injury might and should have been foreseen. *Id.* An injury is foreseeable if a reasonably prudent person, under the same or similar circumstances, would have anticipated that injury to another was the likely result of his conduct. *Id.*

**{¶32}** A defendant may be relieved of liability for his negligent conduct if an intervening act breaks the causal connection between the defendant's negligence and the injury. *Berdyck v. Shinde*, 66 Ohio St.3d 573, 613 N.E.2d 1014 (1993).

**{¶33}** The intervention of independent or intervening forces will not break the causal connection between a negligent act if the intervention of such forces was itself probable or foreseeable. *Holdshoe v. Whinery*, 14 Ohio St.2d 134, 237 N.E.2d 127 (1968). However, it is not necessary that the person charged with negligence should have foreseen the precise injury which resulted from his act or failure to act. *Id.* The intervening act of a third person does not necessarily relieve the owner of an earlier

negligent act from liability when the intervening cause of an injury is of such nature as could reasonably have been anticipated. *Id.* The test for the break in causation is "whether the original and successive acts may be joined together as a whole, linking each of the actors as to the liability, or whether there is a new and independent act or cause which intervenes and thereby absolves the original negligent actor." *Hale v. State Farm Mut. Auto. Ins. Co.*, 5th Dist. Stark No. 2017CA00223, 2018-Ohio-3035, quoting *Cascone v. Herb Kay Co.*, 6 Ohio St.3d 155, 451 N.E.2d 815 (1983). An intervening act is an "independent" cause "if the intervening act was capable of producing the injury irrespective of the original negligence, was not set in motion by the original negligence, and was not simply a condition on or through which the original negligence operated to produce the injurious result." *Id.*, citing *Mudrich v. Standard Oil Co.*, 153 Ohio St. 31, 90 N.E.2d 859 (1950).

{¶34} This is not a case in which a theft of a motor vehicle or other criminal act is a sufficient superseding cause, as a matter of law, to break the chain of causation. *Pendrey v. Barnes*, 18 Ohio St.3d 27, 479 N.E.2d 283 (1985) (theft of motor vehicle is sufficient superseding cause to, as a matter of law, absolve defendant from negligence); *Lagowski v. Shelly and Sands, Inc.*, 7th Dist. Belmont No. 13 BE 21, 2015-Ohio-2685 (theft of bulldozer is intervening or superseding cause breaking the chain of proximate cause). Rather, this is a case where reasonable minds may differ as to whether there was a break in causation. *Hale v. State Farm Mut. Ins. Co.*, 5th Dist. Stark No. 2017CA00223, 2018-Ohio-3035; *Pavlides v. Niles Gun Show, Inc.*, 93 Ohio App.3d 46, 637 N.E.2d 404 (5th Dist. Stark 1994) (reasonable minds could conclude a loaded firearm

in a child's hands may negligently be discharged, thus, summary judgment was inappropriate).

**{¶35}** We find reasonable minds could differ as to whether the act of the child constituted an intervening or superseding cause, and whether the intervening cause was reasonably foreseeable by the Zoo when a Zoo employee left a golf cart unattended and running, with the knowledge that a key was not necessary to start the golf cart. Thus, we find the trial court committed error in concluding, as a matter of law, that the causal connection was broken by the child's actions.

**{¶36}** The trial court granted appellees' motion for summary judgment on Mr. Inskeep's claim for loss of consortium because the loss of consortium claim is derivative of Mrs. Inskeep's tort claim. "[A] claim for loss of consortium is derivative in that the claim is dependent upon the defendants having committed a legally cognizable tort upon the spouse who suffers bodily injury." *Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 585 N.E.2d 384 (1992). Because we found there are genuine issues of material fact as to appellees' negligence with regard to Mrs. Inskeep, we find the trial court committed error in granting summary judgment on Mr. Inskeep's claim for loss of consortium.

{¶37} Based on the foregoing, appellants' assignments of errors are sustained. The April 27, 2022 judgment entry of the Delaware County Court of Common Pleas is reversed and remanded for proceedings consistent with this opinion.

By Gwin, P.J.,

Hoffman, J., and

Delaney, J., concur