*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DGI, a legally incapacitated person, by Guardian
PEARL IRWIN,

UNPUBLISHED
August 24, 2023

Plaintiff-Appellee,

v

No. 360819
Wayne Circuit Court
LC No. 18-004580-NF

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

Defendant-Appellant,

and

GREAT WEST CASUALTY COMPANY,

Defendant,

and

OOIDA RISK RETENTION GROUP, INC.,
OWNER-OPERATOR SERVICES, INC., and
CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON, SYNDICATE 4444 CNP,

Defendants-Appellees.

Before: M. J. KELLY, P.J., and SHAPIRO and REDFORD, JJ.

PER CURIAM.

Defendant Farm Bureau General Insurance Company of Michigan appeals as of right the trial court's final judgment in favor of plaintiff, a legally incapacitated person, which was entered after the parties stipulated to the amount of damages. Farm Bureau challenges the trial court's denial of its motions for directed verdict and for summary disposition pursuant to MCR 2.116(C)(7) (collateral estoppel). For the reasons stated in this opinion, we affirm.

## I. BACKGROUND

For purposes of this appeal, the underlying facts are not in dispute. Plaintiff, a Michigan resident, claims he suffered catastrophic injuries during a collision when he was operating a 1992 Kenworth semi-tractor trailer hauling freight in Ohio. The Kenworth tractor was registered and titled to Droptine Trucking, LLC, of which plaintiff is the sole member. Plaintiff had a no-fault policy for the tractor, but it was only a bobtail policy, i.e., a policy covering the tractor when it was not hauling a load under dispatch. This policy was issued by OOIDA Risk Retention Group, Inc.[1]

At the time of the accident, the Kenworth tractor was under a long-term lease to Better Management Corporation, an Ohio corporation. Under the lease agreement, Droptine was to secure bobtail liability insurance for the tractor, while Better Management was to "furnish and pay the costs of public liability, bodily injury, property damage, and cargo insurance for the protection of the public as required by all federal and state laws and regulation." Great West Casualty Company had issued an Ohio commercial insurance policy to Better Management that covered the tractor. However, the policy did not provide Michigan personal protection insurance (PIP) benefits given that the accident occurred in Ohio.[2]

Through his wife and guardian, Pearl, plaintiff brought suit seeking no-fault benefits against Great West, OOIDA, and Farm Bureau, which insures plaintiff's personal vehicles. OOIDA was granted summary disposition because plaintiff was hauling a load under dispatch at

---

[1] Plaintiff brought suit against OOIDA, Owner-Operator Services, Inc., and Certain Underwriters at Lloyd's of London Syndicate 444 CNP, which are interrelated entities. We will refer to these entities collectively as OOIDA, as they were during the proceedings in the lower court.

[2] The policy contained the following provision:

> b. Out-of-State Coverage Extensions
>
> While a covered "auto" is away from the state where it is licensed we will:
>
> (1) Increase the Limit of Insurance for Covered Autos Liability Coverage to meet the limit specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing "motor carriers" or passengers or property.
>
> (2) *Provide the minimum amounts and types of other coverages, such as No-Fault, required of out-of-state vehicles, by the jurisdiction where the covered "auto" is being used.* [Emphasis added.]

It is undisputed that the accident occurred in Ohio, which does not have a no-fault liability scheme.

the time of the accident, and, thus, the bobtail policy did not apply. Great West was granted summary disposition because the policy did not provide PIP coverage for plaintiff's accident. This left Farm Bureau as the only remaining insurer in this suit.

The case proceeded to a four-day jury trial. On the second day of trial, Farm Bureau questioned Pearl regarding plaintiff's ownership of the Kenwood tractor. Eventually, the trial court interrupted the testimony and ruled that plaintiff was an owner of the Kenwood tractor on the basis that he "was on the title to the cab of this truck." After the trial court ruled that plaintiff was an owner of the Kenwood tractor, Farm Bureau moved for a directed verdict, arguing that, because plaintiff was an owner of the tractor, and the tractor was uninsured, plaintiff was precluded from receiving PIP benefits under MCL 500.3113(b). The trial court denied Farm Bureau's motion for directed verdict, determining that plaintiff maintained the necessary security through the carrier coverage, his bobtail policy, and the Farm Bureau policy. Farm Bureau then agreed to a judgment in the amount of $1,300,000, subject to Farm Bureau's right to appeal the trial court's rulings.

## II. DISCUSSION

Farm Bureau argues that the trial court erred by denying its motion for directed verdict because plaintiff was a constructive owner of the Kenwood tractor and failed to maintain the required no-fault coverage on the vehicle. Farm Bureau also argues that the trial erred by denying its motion for summary disposition because plaintiff's claims were barred by collateral estoppel. We disagree on both counts.[3]

## A. NO-FAULT COVERAGE

Farm Bureau argues that plaintiff was precluded from receiving PIP benefits under MCL 500.3113(b) because at the time of the accident, plaintiff was an owner of an uninsured vehicle, the Kenwood tractor, that he was operating during the accident. Plaintiff contends that he was not a constructive owner of the tractor[4] and that the Great West and OOIDA policies provided the requisite coverage to satisfy MCL 500.3101. Because we agree with plaintiff that he was not a constructive owner of the tractor in his individual capacity, we need not address whether the requisite coverage existed.

---

[3] We review de novo a trial court's decision on a motion for a directed verdict. *Taylor v Kent Radiology*, 286 Mich App 490, 499; 780 NW2d 900 (2009). "This Court examines all the evidence presented and legitimate inferences that may be drawn therefrom in the light most favorable to the nonmoving party to determine whether there was a question for the factfinder." *Moore v Detroit Entertainment, LLC*, 279 Mich App 195, 201; 755 NW2d 686 (2008). We also review de novo a trial court's decision on a motion for summary disposition and its application of the legal doctrine of collateral estoppel. *King v Munro*, 329 Mich App 594, 598-599; 944 NW2d 198 (2019).

[4] "An appellee, . . . without filing a cross-appeal, may urge an alternative ground for affirmance, even if the alternative ground was considered and rejected by the lower court or tribunal." *Meisner Law Group PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 713 n 3; 909 NW2d 890 (2017) (quotation marks and citation omitted).

"The purpose of the Michigan no-fault act is to broadly provide coverage for those injured in motor vehicle accidents without regard to fault." *Iqbal v Bristol West Ins Group*, 278 Mich App 31; 748 NW2d 574 (2008). "Under the no-fault act, an insurer is liable to pay [PIP] benefits [to any Michigan resident] for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle[.]" *Dye by Siporin & Assoc, Inc v Esurance Prop & Cas Ins Co*, 504 Mich 167, 180; 934 NW2d 674 (2019) (quotation marks and citation omitted). "Although designated as 'personal protection insurance' under the no-fault act, PIP benefits are in fact statutory benefits, arising regardless of whether an injured person has obtained a no-fault insurance policy." *Id*. at 180-181.

MCL 500.3113 precludes a person from receiving PIP benefits if, at the time of the accident, the owner of the vehicle involved in the accident did not have the proper insurance coverage. *Twichel v MIC Gen Ins Corp*, 469 Mich 524, 527; 676 NW2d 616 (2004). Specifically, MCL 500.3113(b) provides:

> A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:
>
> * * *
>
> (b) The person was the owner or registrant of a motor vehicle or motorcycle involved in the accident with respect to which the security required by section 3101 or 3103 was not in effect.

This statutory exclusion for PIP benefits is only relevant to plaintiff's claim if he is considered the tractor's "owner," which is defined by the no-fault act, in relevant part, as:

> (*i*) A person renting a motor vehicle or having the use of a motor vehicle, under a lease or otherwise, for a period that is greater than 30 days.
>
> * * *
>
> (*iii*) A person that holds the legal title to a motor vehicle or motorcycle, other than a person engaged in the business of leasing motor vehicles or motorcycles that is the lessor of a motor vehicle or motorcycle under a lease that provides for the use of the motor vehicle or motorcycle by the lessee for a period that is greater than 30 days. [MCL 500.3101(3)(l)(*i*) and (*iii*).]

A vehicle may have more than one owner under the no-fault act. *Ardt v Titan Ins Co*, 233 Mich App 685, 691-692; 593 NW2d 215 (1999).

The parties agree that Droptine was an owner of the tractor as the legal title holder, MCL 500.3101(3)(l)(*iii*), and that Better Management was an owner of the tractor as a long-term lessee, MCL 500.3101(3)(l)(*i*). Farm Bureau, however, argues that plaintiff should also be considered a constructive owner of the tractor under MCL 500.3101(3)(l)(*i*) because he had use of the tractor for a period greater than 30 days. Plaintiff contends that this argument disregards the separate corporate structure he created for purposes of his trucking business.

It is well settled that "[a] corporation is its own 'person' under Michigan law, an entity distinct and separate from its owners, even when a single shareholder holds ownership of the entire corporation." *Hills & Dales v Pantig*, 295 Mich App 14, 20; 812 NW2d 793 (2011). See also *Cedric Kushner Promotions, Ltd v King*, 533 US 158, 163; 121 S Ct 2087; 150 L Ed 2d 198 (2001) ("[I]ncorporation's basic purpose is to create a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individuals who created it, who own it, or whom it employs."). "Although a limited liability company is not a corporation under Michigan law, it is nonetheless true that the rules regarding corporate form apply equally to limited liability companies." *Salem Springs, LLC v Salem Twp*, 312 Mich App 210, 223; 880 NW2d 793 (2015). We have previously set forth the standards governing limited liability companies:

> *First*, a limited liability company is a separate legal entity and "has all powers necessary or convenient to effect any purpose for which the company is formed." MCL 450.4210. *Second*, ownership in a limited liability company is made up of one or more members. MCL 450.4102(p). *Third*, "[a] membership interest is personal property" and "[a] member has no interest in specific limited liability company property." MCL 450.4504(1), (2). *Fourth*, a person who is a member or manager of a limited liability company is not ordinarily liable "for the acts, debts, or obligations" of the company. MCL 450.4501(4). And *Fifth*, a manager of the limited liability company "is an agent" of the company.[5] MCL 450.4406. [*Dawley v Hall*, 319 Mich App 490, 496-497; 902 NW2d 435 (2017), vacated on other grounds 501 Mich 166 (2018) (first two alterations in original, some citations omitted).]

"Under Michigan law, the activities of an agent are ordinarily attributed to the principal and not to the agent himself." *Id.* at 498.

When determining whether a person is an owner, the proper focus is on the nature of the person's right to use the vehicle for a period greater than 30 days. *Twichel*, 469 Mich at 527. The question thus becomes who is the operative "person" that had the right to use the tractor, Droptine or plaintiff in his individual capacity. See *Booth Newspapers, Inc v Wyoming City Council*, 168 Mich App 459, 474; 425 NW2d 695 (1988) ("As a general rule, the term 'person' in a statute is defined as including corporations unless such a construction would be inconsistent with the manifest intent of the Legislature.").

As noted: "A member has no interest in specific limited liability company property." MCL 450.4504(2). See also *Hollins v Brierfield Coal & Iron Co*, 150 US 371, 383; 14 S Ct 127; 37 L Ed 1113 (1893) ("[A corporation] holds its property as any individual holds his, free from the touch of a stockholder who, though equitably interested in, has no legal right to, the property."). There is no dispute that the tractor was company property, and therefore the right to use the tractor belonged to Droptine, separate and distinct from plaintiff as an individual. If there was evidence that plaintiff used the vehicle for personal use, we would conclude that he had, in his capacity as Droptine's principal, given himself permission to use the vehicle for his personal use and agree he was a constructive owner if that right of use was for a period of more than 30 days. See *Ardt*, 233

---

[5] As Droptine's sole member, plaintiff was also the manager. See MCL 450.4401.

Mich App at 690-691 (holding that "having the use" of the vehicle refers to "proprietary or possessory usage, as opposed to merely incidental usage under the direction or with the permission of another."). However, in this case, the record is devoid of any evidence that plaintiff ever used or had the right to use the tractor in his individual capacity for a period of 30 days or more. Plaintiff's wife, Pearl, estimated that plaintiff drove the tractor for work four to six days a week or 80 to 100 hours a week and was home with the tractor parked in the driveway about two days a week. The reasonable inference is that when plaintiff was not working, the tractor remained parked in his driveway and was not used for any personal purpose. Farm Bureau has not proffered any evidence to the contrary to create a question of fact on this issue. Accordingly, we conclude, the record evidence in this case does not establish that plaintiff used the tractor under any circumstances other than in relation to Droptine's business.

Farm Bureau relies heavily on Pearl's testimony that plaintiff owned the tractor. Notably, there is no indication that Pearl was specifically testifying that plaintiff owned the tractor personally, as opposed to referring to Droptine's ownership of the vehicle. Regardless, a lay witness may not testify to a legal conclusion or question of law to be decided by a court. See MRE 701; *Thorin v Bloomfield Hills Bd of Ed*, 203 Mich App 692, 704; 513 NW2d 230 (1994). Farm Bureau also relies on the tractor being parked in plaintiff's home driveway when not in use. However, plaintiff is listed as Droptine's resident agent and his home address was used as Droptine's registered office. See MCL 450.4207(1); MCL 450.4203(1)(c). Therefore, the parking of the tractor at plaintiff's home does not by itself indicate personal use or ownership.[6]

Farm Bureau maintains that precluding recovery of PIP benefits in this case is required under a straightforward application of MCL 500.3113(b), MCL 500.3101(3)(l), and the statutes' interpretative caselaw. However, in the published cases relied on by Farm Bureau, there was PIP coverage under either the bobtail policy or the commercial carrier policy, and so whether the plaintiff was precluded from recovering under his personal policy was not at issue. See *Besic v Citizens Ins Co of the Midwest*, 290 Mich App 19; 800 NW2d 93 (2010); *Integral Ins Co v Maersk Container Service, Co, Inc*, 206 Mich App 325; 520 NW2d 656 (1994).[7] Accordingly, this issue must be decided on the basis of the rules regarding corporate form. We respect the corporate form of a single-member LLC as much as we do for multicorporate entities. See *Salem Springs, LLC*, 312 Mich App at 223. Farm Bureau does not argue that the corporate veil should be pierced in

---

[6] That plaintiff listed depreciation of the tractor on his personal tax return is also unremarkable. For income tax purposes, single-member limited liability companies are generally disregarded as entities separate from its owner. See IRS, Single Member Limited Liability Companies https://www.irs.gov/businesses/small-businesses-self-employed/single-member-limited-liability-companies (last accessed August 15, 2023).

[7] As far as unpublished opinions, Farm Bureau relies on *Guraj v Connecticut Indemnity Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued February 23, 2006 (Docket No. 257509), but there is no indication that the truck driver in that case had formed a limited liability company or other entity for his trucking business. To the contrary, this Court in *Guraj* noted that "[p]laintiff does not dispute that he was the owner of the semi-truck involved in the accident . . . ." *Id*. at 3.

-6-

this case or that any other reason exists for why Droptine's corporate separateness should not be respected. For the reasons discussed, it is clear that Droptine was the operative "person" that had the right to use the tractor and that plaintiff was at all times acting as Droptine's agent with respect to his use of the tractor. Accordingly, we affirm the trial court's denial of a directed verdict on the basis that plaintiff was not a constructive owner of the vehicle.[8]

## B. COLLATERAL ESTOPPEL

Farm Bureau also argues that the trial court erred in denying its motion for summary disposition on the basis of collateral estoppel. Specifically, Farm Bureau contends that plaintiff's claims were barred by collateral estoppel because his claims for damages for injuries suffered in the subject accident had already been litigated in a third-party negligence case in Ohio. We disagree.

"Generally, for collateral estoppel to apply three elements must be satisfied: (1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *Monat v State Farm Ins Co*, 469 Mich 679, 682–684; 677 NW2d 843 (2004) (citations and quotations omitted). "[W]here collateral estoppel is being asserted defensively against a party who has already had a full and fair opportunity to litigate the issue, mutuality is not required." *Id*. at 680-681.

Here, the only issue in dispute is whether a question of fact essential to the judgment was actually litigated and determined by a valid, final judgment. Farm Bureau relies on *Monat*, in which the plaintiff was collaterally estopped from bringing a first-party action on the basis of a previously decided third-party negligence action. See *id*. at 681, 695. However, in that case, the jury specifically found that the plaintiff was not injured. *Id*. In the instant case, the jury in plaintiff's third-party negligence case only found that the accident did not *proximately injure* plaintiff.

Under Ohio law, "[t]he rule of proximate cause requires that the injury sustained shall be the natural and probable consequence of the negligence alleged[.]" *Jeffers v Olexo*, 43 Ohio St 3d 140, 143; 539 NE2d 614 (1989) (quotation marks and citation omitted). "An injury is the natural and probable cause of the negligent conduct if the injury might and should have been foreseen." *Inskeep v Columbus Zoological Park Ass'n*, 2023-Ohio-288; 207 NE3d 876, 883 (Ohio App, 2023). By contrast, a no-fault insurer is liable to pay PIP benefits "for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." MCL 500.3105. "[T]he term 'arising out of' does not require as strict a showing of causation as does the concept of proximate cause." *Buckeye Union Ins Co v Johnson*, 108 Mich App 46, 50; 310 NW2d 268 (1981).

---

[8] Whether Farm Bureau may seek to recover the PIP benefits as a subrogee of Droptine is not before us. See MCL 500.3177. The sole issue in this appeal is whether plaintiff is disqualified from receiving PIP benefits.

In a subsequent action, the ultimate issue to be determined must be identical as that involved in the first action, not merely similar. *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 529; 866 NW2d 817 (2014). Based on the evidence that Farm Bureau presented with its motion for summary disposition on the basis of collateral estoppel, it does not appear that the issue to be decided in this case was identical to the issue involved in the Ohio case. Unlike the jury in *Monat*, the Ohio jury did not specifically find that plaintiff had not been injured. Rather, the jury decided that the accident caused by the defendants did not proximately cause plaintiff's injuries. Included in that inquiry was whether plaintiff's injuries were a foreseeable and probable consequence of the defendants' negligence. *Jeffers*, 43 Ohio St 3d at 143. The jury did not determine whether the injuries arose out of plaintiff's use of the tractor. The jury may have determined that plaintiff was in fact injured, but the defendants were not the "proximate cause" of the injury, or it may have concluded that plaintiff was not injured. However, based on the evidence Farm Bureau presented, the trial court properly denied the motion. Farm Bureau failed to adequately support its assertion that the issue to be determined in this case was identical to the issue involved in the Ohio case. Therefore, the trial court did not err in denying Farm Bureau's motion for summary disposition.

Affirmed.

/s/ Michael J. Kelly
/s/ Douglas B. Shapiro
/s/ James Robert Redford

-8-